*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOHN C. BEESON and XONG CHAO BEESON, | ) ) ) | Supreme Court No. S-15018 |
| Appellants, | ) ) | Superior Court No. 3PA-08-01972 CI |
| v. | ) ) | O P I N I O N |
| CITY OF PALMER, | ) ) | No. 7092 – March 25, 2016 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Ross A. Kopperud, Palmer, for Appellants. Michael R. Gatti and Mary B. Pinkel, Wohlforth, Brecht, Cartledge & Brooking, Anchorage, for Appellee. Laura Fox, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Amicus Curiae State of Alaska. James S. Burling, Sacramento, California, for Amicus Curiae Pacific Legal Foundation.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I. INTRODUCTION

John and Xong Chao Beeson own and live on a property in the Palmer West Subdivision in the City of Palmer. Since they moved to the property in 1985, the Beesons have experienced several flooding incidents on their land. They attribute this

flooding to water backing up against Helen Drive, a long-standing two-lane road adjacent to their property originally built by the Matanuska-Susitna Borough but controlled by the City since 2003. After the City installed a water line under Helen Drive and repaved the road surface in 2005, the flooding became more severe and caused serious damage to the Beesons' home. The Beesons brought an inverse condemnation claim against the City, arguing that the City was liable for the damage to their property. After a three-day bench trial the superior court found that the City's road reconstruction project was not a substantial cause of the flooding and therefore the City could not be liable in inverse condemnation. The superior court also granted attorney's fees to the City. The Beesons appeal both rulings. We affirm the superior court's decision with respect to the inverse condemnation claim and remand for further proceedings regarding attorney's fees.

## II.    FACTS AND PROCEEDINGS

### A.    Factual Background

The Beesons purchased their home in the Palmer West Subdivision in 1985; their property was and remains adjacent to Helen Drive, a pre-existing two-lane gravel road constructed by the Matanuska-Susitna Borough. The Beesons first noticed water pooling in their yard and the Helen Drive right-of-way in the spring of 1986. At the Beesons' request the Matanuska-Susitna Borough, which was responsible for the road at that time, installed a dry well[1] to try to eliminate the pooling. Water continued to pool on the Beesons' property in subsequent years. The characteristics of the pooling depended on snow and rain conditions each spring. In 1998 the Borough paved Helen Drive, raising the road at least five inches. Although John Beeson testified at trial that

---

[1]    A dry well is a large-diameter pipe installed vertically in the ground and filled with porous material that facilitates the absorption of water into the ground.

flooding conditions after the paving remained "[a]bout the same," the superior court found that Beeson's testimony was not credible and concluded that the Beesons had routinely pumped water from their property across Helen Drive to alleviate ponding after the paving.

In 2003 the City of Palmer annexed the area in which the Beesons' property is located and assumed ownership of and responsibility for Helen Drive. In 2005 the City undertook the Helen Drive Project, in which it installed a water line to deliver municipal water and reconstructed the road. The following spring a larger than usual pool of water formed on the Beesons' property, extending over their parking area and into their garage. The Beesons' property flooded again in 2007 during a warm period when a great deal of rain fell while there was still snow on the ground. The City responded by providing a steamer truck to try to rehabilitate the dry well, delivering material to create dikes and berms, and pumping water from the Beesons' property using City and hired equipment. The property flooded yet again in 2009, damaging the Beesons' living room, basement, garage, and personal property. The Beesons hired a professional restoration service to repair the damage.

B.    Proceedings

The Beesons filed suit against the City in September 2008, claiming inverse condemnation under article I, section 18 of the Alaska Constitution[2] and the Fifth Amendment to the United States Constitution,[3] for flooding damage that the Beesons alleged was associated with Helen Drive. In December 2010 the City made an offer of judgment to the Plaintiffs for $10,000. The Beesons did not accept the offer.

---

[2]    "Private property shall not be taken or damaged for public use without just compensation." Alaska Const. art. I, § 18.

[3]    "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

In the spring of 2011 the City and the Beesons moved for summary judgment and partial summary judgment, respectively. After hearing oral argument, the superior court denied both motions. The superior court concluded that there was a genuine issue of fact regarding whether the City's 2005 Helen Drive Project caused the flooding.

At trial in October 2012 the Beesons focused on two issues. First, the Beesons argued that the 2005 Helen Drive Project raised the elevation and changed the drainage of the road, causing flooding in their home. After hearing all the evidence, the superior court rejected this first theory, finding that the road was in fact slightly lower after the Project. The Beesons do not appeal the superior court's finding regarding the road elevation.

Second, the Beesons asserted that even if the Project did not raise the elevation of the road, the City was liable in inverse condemnation because it did not install a culvert during the Project to relieve the drainage runoff water that backs up from Helen Drive; the Beesons argued that this failure to install a culvert led to their increased flooding damage after 2005. John Beeson testified that he asked a site engineer for the 2005 Helen Drive Project to install a culvert under the road in front of his property. The City of Palmer's design engineer, David Lundin, testified that he had been asked by the City to investigate a culvert as a fix to the Beesons' flooding and that he had drawn a culvert plan but had no finished design. The superior court noted in its decision that "[t]he experts agree that if a culvert is built across Helen Drive . . . , then water could be diverted across the street and towards a path for natural drainage to occur."

The superior court ultimately found that "Helen Drive, as repaved by the City, was not a substantial cause of the periodic flooding to the [Beesons'] property." Based on the testimony of professional engineer Donald Carlson, it found that "the flooding was caused by a combination of factors," one of which was "the roadway

obstructing movement of water." The other factors cited were "significantly higher than average temperature and rain during winter months" and the location of the Beesons' home on their property, which "sits at the lowest point in a small basin of properties." The superior court concluded that "a takings claim cannot be based on interference with property rights that is 'merely the consequence of negligent government conduct' " and that "government activity itself must be the cause of the damage," citing an Oregon Supreme Court case, *Vokoun v. City of Lake Oswego*.[4] The superior court concluded that "[t]he Beesons cannot establish a claim for inverse condemnation based on the alleged negligence of the City in failing to construct a culvert with the Helen Drive construction."

The superior court awarded attorney's fees in a February 2013 order. Relying on Alaska Rule of Civil Procedure 68(b)(2),[5] the superior court ordered the Beesons to pay "fifty percent of [the City of Palmer's] actual reasonable attorney's fees

---

[4]    56 P.3d 396, 401 (Or. 2002).

[5]    Rule 68(b) provides in pertinent part:

    If the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer, . . . the offeree, whether the party making the claim or defending against the claim, shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney's fees incurred by the offeror from the date the offer was made as follows:

    . . . .

    (2)    if the offer was served more than 60 days after the date established in the pretrial order for initial disclosures required by Civil Rule 26 but more than 90 days before the trial began, the offeree shall pay 50 percent of the offeror's reasonable actual attorney's fees.

incurred from December 21, 2010, when it made an offer of judgment to the Beesons, to the [time of the February 4, 2013 order]." The court awarded the City $81,902.50 in attorney's fees, determining that the City had provided a reasonable accounting of time and labor spent on the case.

The Beesons argue on appeal that the superior court erred in failing to find that their property had been taken or damaged by the City because their property had been damaged by flooding caused by a City street. The Beesons primarily claim that the City is liable in inverse condemnation simply because it now owns Helen Drive and the road as designed without a culvert blocks the natural drainage of water away from the Beesons' property. The Beesons argue that the superior court was obligated to find compensable damage under Alaska's Constitution and the United States Constitution because all of the expert valuation witnesses testified that the Beesons suffered damage to their property. In contrast, the City frames the issue on appeal as whether the superior court erred in ruling that periodic flooding is not a taking when the 2005 Helen Drive Project did not create or cause the flooding. The Beesons also appeal the superior court's award of attorney's fees.

## III.   STANDARD OF REVIEW

We review questions of constitutional law de novo.[6] We review the factual findings of a trial court for clear error, "a standard that is met if, after a thorough review of the record, we come to a definite and firm conviction that a mistake has been made."[7]

---

[6]     *Anchorage v. Sandberg*, 861 P.2d 554, 557 (Alaska 1993).

[7]     *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003).

We review de novo whether the superior court correctly applied the law in awarding attorney's fees.[8]

## IV. DISCUSSION

A party alleging inverse condemnation must establish the following elements: (1) a taking or damaging of private property (2) proximately caused by a government entity (3) exercising power in the public interest without formal condemnation proceedings.[9] A property owner can only recover damages if, after meeting these three elements, he can show that the government's activities deprived him of some "economic advantages of ownership."[10]

Because there is ambiguity regarding when the actions of a government entity exercising power in the public interest can give rise to inverse condemnation liability for damage from surface waters, we begin by clarifying the third element of inverse condemnation in that specific context. We next clarify the second element: the causation standard for inverse condemnation. We then review the superior court's decision that the Beesons' claim regarding the 2005 Helen Drive Project fails on causation, the second element of the inverse condemnation test, and the Beesons' alternative argument that the City's mere ownership of the road and failure to build a culvert to alleviate flooding constitutes an inverse taking. Finally, we consider the

---

[8]     *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001).

[9]     *See, e.g., Fairbanks N. Star Borough v. Lakeview Enters., Inc.*, 897 P.2d 47, 52 (Alaska 1995); *Bakke v. State*, 744 P.2d 655, 657 (Alaska 1987) (requiring a property owner to show that damage is "proximately caused . . . by the construction of a public work deliberately planned and carried out by a public agency").

[10]     *Homeward Bound, Inc. v. Anchorage Sch. Dist.*, 791 P.2d 610, 614 (Alaska 1990).

proper grounds for awarding attorney's fees in an inverse condemnation case, which by definition raises a constitutional question.

## A. Liability For Surface Water Damage Based On Government Action

The Washington Supreme Court has articulated a sensible standard for determining when damage from a government road project that affects surface waters can give rise to inverse condemnation liability. Under that standard, "a municipality may be liable for [water] damage[] to an adjoining landowner's property caused by a street which acts to collect, channel[,] and thrust water in a manner different from the natural flow"[11] before the government project, and which does so in a "concentrated volume."[12] This prevents a municipality from being able to "avoid all liability by building a road without devices to control the flow of surface water, regardless of the consequences."[13] This standard provides a helpful framework for analyzing when the actions of a government entity exercising power in the public interest can give rise to inverse condemnation liability based on damage from surface waters.

## B. Legal Cause In A Claim Of Inverse Condemnation

In *Bakke v. State* we briefly discussed the question of proximate cause for a claim of inverse condemnation.[14] There we held that a cause is proximate when the

---

[11]     *DiBlasi v. City of Seattle*, 969 P.2d 10, 16 (Wash. 1998) (en banc).

[12]     *Id.* at 15 (quoting *Wood v. City of Tacoma*, 119 P. 859, 862 (Wash. 1911)).

[13]     *Id.* at 16; *cf. Phillips v. King County*, 968 P.2d 871, 882 (Wash. 1998) (en banc) ("[A] long line of Washington cases holds that a municipality may not collect surface water by an artificial channel, or in large quantities, and pour it, in a body, on the land of a private person, to his or her injury.").

[14]     *See* 744 P.2d at 656 (addressing an inverse condemnation claim arising from a landowning couple's complaint that a state logging operation caused a landslide years later, resulting in damage to their property).

injury would not have occurred "but for the act" and reasonable persons would regard this act "as a cause and attach responsibility to it."[15] We noted that "[a] corollary of this statement is, of course, that if the injury would have happened in exactly the same manner in the absence of the act," it "is not the proximate cause of the injury."[16]

Elsewhere we have said that one element of proximate cause is whether a cause was a "substantial factor" in bringing about the damage at issue.[17] This substantial factor test is fitting with regard to inverse condemnation liability. Though this test is borrowed from the tort realm and we use caution in adopting tort language in the takings context, we have previously looked to tort law to inform our understanding of the elements of proximate cause as required for a finding of inverse condemnation. *Bakke*, an inverse condemnation case,[18] cited *Sharp v. Fairbanks North Star Borough*, a tort negligence case.[19] *Sharp* held that to give rise to a compensable injury and be a

---

[15]    *Id.*

[16]    *Id.*

[17]    *See, e.g.*, *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007) ("Alaska follows the 'substantial factor test' of [proximate] causation, which generally requires the plaintiff to show that the accident would not have happened 'but for' the defendant's [act] and that the . . . act was so important in bringing about the injury that reasonable individuals would regard it as a cause and attach responsibility to it."); *P.G. v. State, Dep't of Health & Human Servs.*, 4 P.3d 326, 334 (Alaska 2000) ("We have generally recognized that a defendant's . . . conduct may be the legal or proximate cause of the plaintiff's injury if the . . . act was more likely than not a substantial factor in bringing about the injury." (citing *Morris v. Farley Enters., Inc.*, 661 P.2d 167, 169 (Alaska 1983))); *Vincent by Staton v. Fairbanks Mem'l Hosp.*, 862 P.2d 847, 851 (Alaska 1993); *State v. Abbott*, 498 P.2d 712, 726-27 (Alaska 1972).

[18]    *See* 744 P.2d at 656-57.

[19]    *See* 569 P.2d 178, 181 (Alaska 1977).

proximate "legal cause," an act must be "more likely than not a substantial factor in bringing about the injury."[20]

Other states have adopted similar substantial factor tests in the takings context. The California Supreme Court has held that "to establish a causal connection between the public improvement and the plaintiff's damages, there must be a showing of a substantial cause-and-effect relationship excluding the probability that other forces *alone* produced the injury."[21] This aligns with the definition of proximate cause that we articulated in *Bakke* and demonstrates how the substantial factor test dovetails into our existing proximate cause jurisprudence.

We now clarify that in the inverse condemnation realm, to be proximate a cause must have been more likely than not a substantial factor in bringing about the injury. This does not preclude the possibility that there can be multiple substantial causes of damage, as appears to have been the case here, and aligns with our past holding in *Bakke* that "[a]n act . . . need not be *the* single producing cause of an injury to be a proximate cause, but need only be *a* producing cause."[22] Rather, it focuses the legal inquiry on whether one producing cause, possibly among multiple causes of damage, is a substantial factor sufficient to render it a proximate cause.

---

[20]     *Id.* (alteration omitted) (quoting *City of Fairbanks v. Nesbett*, 432 P.2d 607, 610 (Alaska 1967)).

[21]     *Belair v. Riverside Cty. Flood Control Dist.*, 764 P.2d 1070, 1075 (Cal. 1988) (en banc); *see also Warner/Elektra/Atl. Corp. v. County of DuPage*, 771 F. Supp. 911, 914 (N.D. Ill. 1991), *aff'd*, 991 F.2d 1280, 1286 (7th Cir. 1993) (referring approvingly to the California test).

[22]     744 P.2d at 656 (emphasis in original).

### C. Whether The City Is Liable In Inverse Condemnation

Although the Beesons have consistently argued that the City is liable in inverse condemnation for flooding on their property, their argument as to why has evolved over the course of this case. During trial the Beesons focused on the City's 2005 Helen Drive Project and argued that the City was liable for (1) changing the drainage of the road during the 2005 Project, which they allege caused their flooding, and (2) failing to build a culvert during the 2005 Project, which they allege would have alleviated their flooding. But on appeal the Beesons have shifted their focus away from the City's 2005 Project and argue that the City is liable simply because it now owns Helen Drive and the road as designed without a culvert blocks the natural drainage of water away from the Beesons' property. Under any of these theories, the City is not liable. We address each of the Beesons' arguments in turn.

### 1. Whether the City's actual work during the 2005 Helen Drive Project was a substantial factor in causing flooding on the Beesons' property

The superior court found as a factual matter that "Helen Drive, as repaved by the City, was not a substantial cause of the periodic flooding to the Beesons' property." Though the superior court used the term "substantial cause," we assume it was referring to the substantial factor test as a component of proximate cause. "A finding of proximate cause is normally considered to be factual in nature and as such will be reversed only when clearly erroneous."[23] "A finding of fact is clearly erroneous if it leaves this court with a definite and firm conviction on the entire record that a mistake

---

[23]     *Id.* (citations omitted).

has been made. This standard, therefore, requires us to give great deference to the findings of the superior court."[24]

The superior court heard testimony and evidence regarding the causes of the Beesons' flooding and found that "the flooding was caused by a combination of factors," none of which explicitly included the work done during the 2005 Helen Drive Project. On appeal the Beesons claim that the superior court's findings regarding the 2005 Project are clearly erroneous. But their brief merely highlights the damage to their property and the potential relief a culvert would have provided. The Beesons do not challenge the flooding causation testimony of the City's professional engineer, Donald Carlson, which the superior court found to be both credible and convincing. Because we are not left "with a definite and firm conviction on the entire record that a mistake has been made"[25] by the superior court in its reliance on Carlson's testimony, we cannot conclude that the superior court clearly erred in its causation finding regarding the impact of the 2005 Helen Drive Project. We affirm the superior court's conclusion that the City is not liable to the Beesons under their claim of inverse condemnation related to the 2005 Helen Drive Project because the Project in and of itself was not a substantial factor contributing to the Beesons' flooding and thus could not have been a proximate cause.

**2.      Whether the City's failure to install a culvert to alleviate flooding caused by a road it owns constitutes a taking**

In addition to the inverse condemnation claim arising from the work performed in connection with the 2005 Helen Drive Project, the Beesons also assert an

---

[24]      *Nerox Power Sys., Inc. v. M-B Contracting Co.*, 54 P.3d 791, 794 (Alaska 2002) (citation omitted); *see also Kollander v. Kollander*, 322 P.3d 897, 904 (Alaska 2014) (noting that the clearly erroneous standard of review is "deferential to the superior court's findings").

[25]      *See Nerox Power Sys.*, 54 P.3d at 794.

inverse condemnation claim stemming from the original construction of Helen Drive without a culvert to direct runoff water away from their property and from the 1998 paving of the road. The parties litigated whether the statute of repose barred inverse condemnation claims that might be made by the Beesons arising from the original construction of the road and from the Borough's 1998 paving project. The statute of repose, Alaska Statute 09.10.055, provides that a person may not bring an action for property damage unless commenced within 10 years of "substantial completion of the construction alleged to have caused the . . . property damage." The superior court concluded that such claims were barred by the statute because the paving of the road had been completed in July 1998 and the Beesons filed their claim in September 2008. The Beesons have not challenged the superior court's ruling on the statute of repose on appeal and we therefore do not address it.

The Beesons also claim that "when the City's road blocks the natural drainage [of a property], then the state and federal constitutions require that the City compensate the landowners for their losses." But the Beesons have cited no authority holding that a government has a legal duty, *tied to inverse condemnation*, that requires it to modify a public improvement or correct a pre-existing design defect to allay property damage. There are some cases in which inverse condemnation has been predicated on a government's failure to perform necessary ongoing maintenance of a public project,[26] but failed maintenance is not the focus of the Beesons' claim in this

---

[26] *See, e.g.*, *Livingston v. Va. Dep't of Transp.*, 726 S.E.2d 264, 276-77 (Va. 2012) (holding that the government could be required to compensate a property owner for damage caused by stormwater overflow off a waterway that the State had rerouted and failed to maintain by not dredging sediment accumulation).

case.[27]  Instead, the Beesons' claim is focused on remediation of an original project design flaw.[28]  Thus, the Beesons' inverse condemnation claim predicated on the City's ownership of Helen Drive and the road's long-standing existence without a culvert fails.

### D.    Attorney's Fees

The superior court granted attorney's fees to the City in the amount of $81,902.50.  It based its ruling on Alaska Rule of Civil Procedure 68, which provides for an award of reasonable attorney's fees to a defendant if the defendant makes an offer of judgment "[a]t any time more than 10 days before trial begins," the plaintiff rejects the offer, and the final judgment in the case is "at least 5 percent less favorable to the offeree than the offer."  The Beesons do not dispute the reasonableness of the attorney's fees here, but rather they argue that attorney's fees should not be assessed against them in this inverse condemnation case based on AS 09.60.010.

Alaska Statute 09.60.010(c)(2) provides that "[i]n a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska," a court "may not order a claimant to pay the attorney fees of the opposing party . . . if [1] the claimant as plaintiff . . . did not prevail in asserting the right, [2] the action or appeal asserting the right was not frivolous, and [3] the claimant did not have sufficient economic incentive

---

[27]    There was some discussion at trial regarding whether the City's failure to maintain the dry well caused flooding on the Beesons' property, but the Beesons ultimately abandoned arguments related to maintenance of the dry well in the trial court and on appeal.

[28]    *See Phillips v. King County*, 968 P.2d 871, 881 (Wash. 1998) (en banc) ("It may be that in some factual situations there could be liability on the part of a county for failure to maintain a public drainage system.  However, there is no allegation in this case that lack of proper maintenance caused the damages.  The only allegation is that design, not maintenance, caused the problems." (citations omitted)).

to bring the action or appeal regardless of the constitutional claims involved."[29]  Even if those three components are not met, AS 09.60.010(e) still gives trial courts discretion to "abate, in full or in part, an award of attorney fees . . . if the court finds, based upon sworn affidavits or testimony, that the full imposition of the award would inflict a substantial and undue hardship upon the party ordered to pay the fees and costs."

The superior court did not consider whether under AS 09.60.010(c) the Beesons had "sufficient economic incentive" to bring their action.[30]  But even if the superior court did determine that the Beesons had a "sufficient economic incentive" to bring their claims, it may still have been improper to assess roughly $80,000 in attorney's fees if doing so would "inflict a substantial and undue hardship" on the Beesons as described at AS 09.60.010(e).  Indeed, AS 09.60.010(e) focuses on the claimant's economic circumstances, rather than the reasonableness of attorney's fees.

Because the superior court did not consider either AS 09.60.010(c) or (e), we remand for the superior court to make a determination as to (1) whether the Beesons' economic incentive was sufficient to exclude them, as a non-prevailing party who brought a non-frivolous constitutional claim, from the protection of AS 09.60.010(c), and if so, (2) whether, in its discretion, an award of attorney's fees of over $80,000 against

---

[29]     AS 09.60.010 controls here because it governs constitutional claims, and inverse condemnation claims are brought under the Alaska Constitution, article I, section 18: "Private property shall not be taken or damaged for public use without just compensation."

[30]     This third prong of AS 09.60.010(c) is the only relevant element here because the Beesons meet the first two prongs:  they did not prevail in asserting the right, and the right they asserted was not frivolous.  Because the City conceded that the value of the Beesons' property had been lowered between $35,900 and $42,300 by the flooding, sufficient economic incentive may have been present here.

the Beesons should be abated as an "undue hardship" under AS 09.60.010(e) based on the Beesons' economic circumstances.

## V. CONCLUSION

We AFFIRM the judgment with respect to the inverse condemnation claim because the Beesons have not established that the City's 2005 Helen Drive Project was a proximate cause of their flooding damage, but we REMAND for further proceedings regarding attorney's fees in accordance with AS 09.60.010.