*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOHN EBERHART, | ) | |
| | ) | Supreme Court No. S-16187 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-14-02074 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA PUBLIC OFFICES | ) | |
| COMMISSION, | ) | No. 7276 – August 24, 2018 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Michael J. Walleri, Gazewood & Weiner, PC, Fairbanks, for Appellant. Laura Fox, Assistant Attorney General, Anchorage, and James E. Cantor, Acting Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

CARNEY, Justice.

## I.    INTRODUCTION

This appeal arises from a complaint filed with the Alaska Public Offices Commission (APOC) against then-city council member John Eberhart for actions taken during his campaign for mayor of Fairbanks. The complaint alleged that Eberhart had improperly used government resources in his mayoral campaign. After investigating the

complaint and holding a hearing, APOC fined Eberhart $37.50 for improper use of government resources in violation of a state statute. Eberhart appealed to the superior court, which affirmed APOC's decision. Eberhart asks this court to find that APOC misinterpreted and misapplied relevant statutes, violated the First Amendment, and violated its own procedural rules. We affirm APOC's decision, holding that Eberhart's arguments lack merit.

## II.    FACTS AND PROCEEDINGS

In April 2013 Fairbanks city council member John Eberhart filed a letter of intent to become a candidate for the office of mayor. In July Eberhart emailed the city clerk asking for all of the ordinances and resolutions that he and his election opponent, Vivian Stiver, had sponsored or co-sponsored as city council members. Eberhart used his city email account to send the request. After receiving the information, Eberhart asked the clerk to notify him "if anyone else requests such information about me." In August Eberhart filed his formal declaration of candidacy for mayor and listed his city email address under "contact information [that] can be provided to the public and to the media."

In early February 2014 a Fairbanks resident filed a complaint against Eberhart with APOC. The complainant alleged that Eberhart had used his private employer's corporate resources to make a campaign telephone call, had worked on his campaign during hours for which he was being paid by his employer, and had illegally used city resources — his city email address — in his campaign. In support of the alleged email violation, the complainant attached the official candidate list published by the city clerk listing Eberhart's city email address as contact information and an excerpt

from the Fairbanks city code[1] prohibiting elected officials from using city resources on behalf of a candidate.

After receiving the complaint APOC staff opened an investigation. Staff requested copies of all emails sent from Eberhart's city email account from April 1 to October 1, 2013. In late February 2014 APOC staff asked Eberhart to explain the email exchange in which he had asked the city clerk to provide the ordinances and resolutions he and his opponent had sponsored.

Eberhart's attorney responded with a letter asking APOC to dismiss the complaint. The letter asserted that the telephone call and whether Eberhart was paid for campaign time should not be investigated and objected that the complaint did not allege specific facts or identify a specific statute or regulation as required. The letter did not respond to the email address allegation at all. In response APOC staff argued that the resident's complaint should not be dismissed and defended it as adequate to sustain an investigation. Staff argued that whether Eberhart had "used city resources for campaign purposes" was a factual question best left to APOC.

APOC staff issued its investigative report on March 10 without receiving a response from Eberhart regarding the email exchange. The report concluded that Eberhart had violated a state statute by using the city email system to help his campaign. The report concluded that most of Eberhart's emails had "nothing to do with campaigning" or were permissible "nonpartisan educational election-related communications." But it identified the email exchange with the city clerk as a possible violation because it appeared to have been "made in furtherance of the campaign" as Eberhart sought only his own and his mayoral opponent's records. Because "the cost of

---

[1]     *See* FGCO 50-461(c) (1960).

sending the three emails was *de minimus*" [sic] and did "not cause significant harm to the public," the report recommended a $37.50 fine be imposed.[2]

On March 12 Eberhart filed an answer to the investigative report arguing again that the complaint was inadequate. He also asserted that his actions were constitutionally protected as political speech and "a legitimate use of government resources in furtherance of the legislative deliberative process of the City government." Eberhart claimed that the complainant and APOC staff were engaged in "a malicious prosecution." APOC set a hearing for May 1.

In late April 2014 Eberhart filed a prehearing memorandum. In it he asserted that the burden was on APOC staff to prove that his email influenced the election, not on him to show a legitimate purpose. He invoked the deliberative process privilege and his free speech rights under the First Amendment. He also argued that APOC staff had improperly expanded the investigation beyond the complaint and were biased against him.

Eberhart testified at the May hearing, but he objected that the questions infringed on his First Amendment rights and invaded his deliberative process privilege. Eberhart claimed that his opponent's supporters had been attacking him at city council meetings and he had asked for the resolutions and ordinances to defend himself against such attacks. He specifically testified that he did not intend to use the records in the campaign when he requested them. An APOC staff investigator testified that she had

---

[2]    *See* AS 15.13.390(a) (outlining possible civil penalties for violations of state election rules codified in Title 15). APOC staff outlined the basis for the penalty amount in its investigative report, explaining: "The maximum civil penalty for a violation of AS 15.13.145 is $50 per day for each day the violation continued . . . Eberhart's request to the clerk resulted in three emails, over a period of three days. This represents three penalty days, and therefore the maximum penalty for the violation is $150."

requested the email records to see whether Eberhart had used his city email address for campaign purposes.

The parties disputed whether the investigation into the contents of Eberhart's emails had expanded the original investigation or was merely part of it. Eberhart argued that APOC staff was pursuing a municipal officer for using public information legitimately obtained on the job in his election campaign.

APOC issued a final order finding that Eberhart had violated AS 15.13.145(a)(4).[3] The order noted that in a previous case APOC[4] had found that "the use of municipal assets or property such as an email system for campaign purposes [was] prohibited by this section." APOC "conclude[d] that it [was] more likely than not that the request, focused on [Eberhart]'s record and his opponent's record (rather than on the record of all other city council members), was to obtain information that could be used to influence the mayoral election." The order also acknowledged that the use of resources could be considered *de minimis* and therefore agreed with the recommendation to reduce the civil penalty to $37.50 from a possible $150.[5]

---

[3]     Alaska Statute 15.13.145(a) states:

(a) Except as provided in (b) and (c) of this section, each of the following may not use money held by the entity to influence the outcome of the election of a candidate to a state or municipal office:  (1) the state, its agencies, and its corporations;  (2) the University of Alaska and its Board of Regents;  (3) municipalities, school districts, and regional educational attendance areas, or another political subdivision of the state; and (4) an officer or employee of an entity identified in (1)-(3) of this subsection.

[4]     *Hancock v. Marquardt*, 07-02-CD (July 2, 2008).

[5]     *See* AS 15.13.390(a) (outlining possible civil penalties for violations of

(continued...)

Eberhart appealed the order to the superior court, listing 14 points on appeal. Among them he challenged whether APOC had substantial evidence to support its findings. The court rejected all of Eberhart's claims on appeal.

Eberhart appeals.

## III. STANDARD OF REVIEW

"When the superior court has acted as an intermediate court of appeal, we review the merits of the administrative agency's decision . . . ."[6] "[W]hen the interpretation at issue implicates agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions[,]"[7] then "[w]e give deference to [an] agency's interpretation of a statute so long as it is reasonable[.]"[8] "[W]hen the statutory interpretation does not involve agency expertise, or the agency's specialized knowledge and experience would not be particularly probative[,]"[9] then "we

---

[5] (...continued)
state election rules codified in Title 15).

[6] *Studley v. Alaska Pub. Offices Comm'n*, 389 P.3d 18, 22 (Alaska 2017) (quoting *Tolbert v. Alascom, Inc.*, 973 P.2d 603, 606-07 (Alaska 1999), *superseded on other grounds*). Eberhart argues that the superior court applied the wrong standard of review because it "deferred to APOC on all legal and factual matters." APOC is correct that, insofar as his argument is based on the superior court's alleged error, any such error is irrelevant and harmless because we review the agency decision directly. *Id.*

[7] *Id.* at 22 (quoting *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011)).

[8] *Id.* (second alteration in original) (quoting *Marathon Oil Co.*, 254 P.3d at 1082).

[9] *Id.* (quoting *Lakloey, Inc. v. Univ. of Alaska*, 141 P.3d 317, 320 (Alaska 2006)).

will substitute our own judgment for questions of law."[10]  "Constitutional issues are questions of law subject to independent review."[11]

## IV.  DISCUSSION

### A.  Eberhart Has Abandoned Any Argument That The Agency's Factual Findings Were Not Supported By Substantial Evidence.

APOC argues that Eberhart did not challenge any of the agency's factual findings in this appeal.[12]  In his reply brief Eberhart dismisses APOC's argument as a "false[] claim[]."  He asserts that "[a]ll the evidence in the record establishes that Eberhart['s] purpose [in sending the email and requesting the information] was to address issues arising in City Council meetings."  But he does not point us to anything in his opening brief or statement of points on appeal to show he had actually challenged APOC's factual findings prior to this short statement in his reply brief.  Nor is there any reference to the substantial evidence standard of review for such issues in his reply brief or elsewhere in his briefing to this court.  In contrast Eberhart specifically argued to the superior court that APOC's factual findings were not supported by substantial evidence. We have previously held that an argument omitted from an appellant's points on appeal and not mentioned in the opening brief is abandoned.[13]  We have further held that

---

[10]     *Id.*

[11]     *Patterson v. GEICO Gen. Ins. Co.*, 347 P.3d 562, 568 (Alaska 2015) (quoting *Harrod v. State, Dep't of Revenue*, 255 P.3d 991, 995 (Alaska 2011)).

[12]     Both parties argued this point at oral argument before us:  APOC argued Eberhart had abandoned challenging APOC's factual findings but spent considerable time arguing in the alternative the merits of such a challenge.

[13]     *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 599 (Alaska 2012).

"[a]ttention to the issue in a reply brief does not resuscitate it."[14] Accordingly, we do not address the merits of whether APOC's factual findings were supported by substantial evidence as that issue has been abandoned by Eberhart on appeal.

**B.      Eberhart's Arguments Related To The Interpretation Of AS 15.13.145 Are Without Merit.**

**1.      The phrase "to influence the outcome of the election" does not require proof of actual influence.**

Alaska Statute 15.13.145 prohibits the use of "money held by" public entities — including the State, state agencies, municipalities, and officers or employees of such entities — "to influence the outcome of the election of a candidate to a state or municipal office." APOC found that Eberhart's actions violated the statute because it was more likely than not that he used his municipal email "to obtain information that could be used to influence the mayoral election." Eberhart argues that the statute, by its plain text, only punishes acts that actually influenced an election. APOC responds that the words " 'to influence' put the focus on the purpose behind the spending, not its effects."

The word "to" can be "used as a function word to indicate purpose, intention, tendency, result, or end."[15] As Eberhart argues, courts "ordinarily resist[] reading words or elements into a statute that do not appear on its face."[16] But the word "to" appears on the face of the statute, and one of its common meanings entails purpose

---

[14]      *Id.* (alteration in original) (quoting *Braun v. Alaska Commercial Fishing and Agric. Bank,* 816 P.2d 140, 145 (Alaska 1991)).

[15]      *To*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002).

[16]      *Bates v. United States*, 522 U.S. 23, 29 (1997); *see also Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 192 (Alaska 2007) ("[W]e may not read into a statute that which is not there . . . .").

or intent.[17]  Accordingly APOC's interpretation of the statute, that "to influence" means "for the purpose of influencing," is both reasonable and in keeping with the general rule that courts not read additional terms into a statute.[18]

As APOC argues, Eberhart's interpretation would be unworkable because "whether any particular action or event actually influenced an election is often unknowable."  Even AS 15.20.540, which permits an election contest, does not require challengers to prove that an election official's "malconduct, fraud or corruption" actually influenced the election; it requires them only to prove that the bad acts were "sufficient to change the result of the election."[19]  Contrary to Eberhart's assertion, *Dansereau v. Ulmer* does not require evidence of actual influence — either in an election contest under AS 15.20.540, which is the context of that case, or in the present context.[20]  It would be illogical for AS 15.13.145 to require proof of actual influence resulting from inappropriate use of public money when that level of proof is not required to overturn

---

[17]  *See To*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002).

[18]  Eberhart also argues that 2 AAC 50.375, another campaign finance regulation, is contrary to APOC's interpretation of "to influence."  He is mistaken.  That regulation does not apply to Eberhart's communication with another city employee.  2 Alaska Administrative Code (AAC) 50.375 (2018).  It governs expense reporting, not the source of candidate resources, and the expenses governed in the regulation are those related to communications *with constituents*.

[19]  *See also Braun v. Borough*, 193 P.3d 719, 732 (Alaska 2008) ("[T]he challenging party has 'the dual burden of showing that "there was both a significant deviation from statutory direction, and that the deviation was of a magnitude sufficient to change the result of the election." ' " (quoting *DeNardo v. Municipality of Anchorage*, 105 P.3d 136, 141 (Alaska 2005))).

[20]  903 P.2d 555, 569 (Alaska 1995).  In *Dansereau* we held that the State was not entitled to summary judgment because it had not made "a prima facie showing that any violation was not *of sufficient magnitude to affect* the election result."  *Id.* at 571 (emphasis added).

the result of a completed election.[21]

### 2. It was reasonable for APOC to interpret "money" to include property and assets including the city's email system.

Eberhart argues that APOC was wrong to interpret AS 15.13.145's ban on the use of municipal "money" to include his use of the city email system. He argues that because APOC did not determine the cost or value to the city of the email, there is no suggestion that he "used any money belonging to the City" or cost the city any money, and therefore he did not violate the statute. His reply brief argues that, because the legislature did not define "money" in AS 15.13.400,[22] the legislature intended to define "money" by its "common usage" which would "exclude[] emails."

APOC argues that it has formally and publicly interpreted "money" to include the use of resources beyond just cash. It promulgated a regulation interpreting AS 15.13.145, which establishes that in this context " 'money' means government money, government property and assets, and the use of property, assets, or human resources belonging to a government entity."[23] And a 2008 APOC decision concluded that AS 15.13.145(a)'s prohibition on the use of public money to influence a candidate election "cover[ed] the use of a publicly owned email system, which is purchased and

---

[21]    Eberhart additionally argues that APOC presumed his actions actually influenced the election, and that it is constitutionally impermissible to presume influence from a contribution. He also argues that whether a particular action actually influenced an election is a factual question that cannot be resolved on summary judgment if there are genuine issues of material fact. But APOC did not make any finding or presumption about actual influence. In addition, both arguments would be relevant only if the statute required proof of actual influence; we have held that it does not.

[22]    Providing definitions that apply to Title 15, Chapter 13.

[23]    2 AAC 50.356(d).

maintained through public money."[24]

"Agency interpretations are not binding on our interpretation of a statute,"[25] but we "give deference to an agency's interpretation of a statute when the question involves fundamental policy decisions or administrative expertise"[26] unless the interpretation is unreasonable.[27] When agency expertise "would not be particularly probative on the meaning of the statute," we independently interpret the statute.[28] We do not need to resolve which standard applies in this case because APOC's interpretation is the most logical and reasonable interpretation of the statute.

The dictionary definition of "money" focuses on cash or legal tender.[29] But APOC's argument that "the city's money is used to establish and maintain" its email system is well taken. It is unlikely that the legislature, in attempting to "restore the

---

[24]     *Hancock v. Marquardt*, 07-02-CD (July 2, 2008). Regulated entities are held to have constructive notice of how agencies will interpret statutes from their text. *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1087 (Alaska 2011) (finding that the department's consistent interpretation of a statute sufficiently put parties on notice of that interpretation especially as it was a reasonable interpretation of statutory language); *Alyeska Pipleline Serv. Co. v. State, Dep't of Envtl. Conservation*, 145 P.3d 561, 570-71 (Alaska 2006) (holding that careful reading of statute gave the party constructive notice that it might be subject to fees).

[25]     *Grimm v. Wagoner*, 77 P.3d 423, 433 (Alaska 2003).

[26]     *Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 42 (Alaska 2007).

[27]     *Marathon Oil Co.*, 254 P.3d at 1082.

[28]     *Id.* (quoting *Matanuska-Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986)).

[29]     *Money*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002).

public's trust in the electoral process and to foster good government,"[30] intended to bar public cash from being used to influence elections for a candidate but intended to allow non-monetary resources, purchased and maintained with public cash, to be used for the same purpose. The most reasonable interpretation of the term "money," given the definition in 2 AAC 50.356(d), includes the use of a city-established and maintained resource like the email system.

## C. It Was Not A Violation Of The First Amendment To Enforce The Statute Without A Finding That Eberhart Engaged In Corruption.

Eberhart argues that the only constitutionally legitimate government interest for regulating campaign finances is "preventing corruption or the appearance of corruption,"[31] and that the First Amendment requires the enforcing entity to demonstrate its corruption prevention purpose by proving the existence of corruption each time it enforces campaign finance laws.[32] Eberhart asserts that the fine imposed under AS 15.13 was unconstitutional because APOC did not find any "existence or appearance of corruption."[33] This argument mistakes the requirement that a statute must have a legitimate purpose for a requirement that an enforcing authority must demonstrate that purpose every time it enforces the statute.

---

[30] Ch. 48, § 1, SLA 1996.

[31] *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1450 (2014) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 741 (2008)).

[32] U.S. CONST. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

[33] APOC argues that Eberhart abandoned this argument due to inadequate briefing. Because the argument is easily dispensed with we do not address the issue of waiver.

Eberhart cites several cases for the proposition that preventing corruption is the only legitimate governmental interest for restricting campaign finances.[34] But as APOC points out these cases are specifically about campaign contribution limits, whereas this case implicates an entirely different election-related concern: the improper use of government resources. *McCutcheon v. Federal Election Commission*, one of the cases Eberhart cites, addresses a challenge to a statute establishing aggregate limits on "how much money a donor may contribute in total to all candidates or committees."[35] Its reasoning does not apply to a statute barring the improper use of government resources to influence elections. We find no support for Eberhart's assertion that APOC must prove there was corruption before it can enforce the statute and impose a fine.

D. **APOC Did Not Violate Eberhart's First Amendment Rights By Applying The Statute To Actions That Fall Within A City Council Member's Usual Duties.**

Eberhart asserts that APOC's decision to fine him for sending the email implicates the First Amendment because it "penalizes 'effective advocacy,' " which the United States Supreme Court held is unconstitutional in *Buckley v. Valeo*.[36] He argues that in order to "provid[e] effective advocacy as a City Council member" he needed to research the public record regarding issues raised by members of the public and that he was doing such research when he sent the email. But the *Buckley* court was concerned with whether restrictions on campaign contributions would "prevent[] candidates and

---

[34] *See McCutcheon*, 134 S. Ct. at 1438; *Buckley v. Valeo*, 424 U.S. 1, 21 (1976); *State v. Alaska Civil Liberties Union*, 978 P.2d 597, 603 (Alaska 1999).

[35] *McCutcheon*, 134 S. Ct. at 1442 (citing 2 U.S.C. § 441a(a)(3) , *invalidated by McCutcheon*, 134 S. Ct. 1434).

[36] *See* 424 U.S. at 21 ("[C]ontribution restrictions could have a severe impact on political dialogue if the limitations prevented candidates and political committees from amassing the resources necessary for effective advocacy.").

political committees from amassing the resources necessary for effective advocacy."[37] We echoed that understanding of "effective advocacy" in *State v. Alaska Civil Liberties Union*, which discussed limits on contributions to candidates for office.[38] The cases again do not apply to Eberhart's actions. Imposing a fine for inappropriate use of his city email account does not undermine Eberhart's ability to be an effective advocate for his constituents as a sitting member of the city council.

Eberhart also argues that APOC's "rule" would bar sitting elected officials from using even public information that they had received as office holders in their election campaigns. But APOC emphasizes that its order did not punish Eberhart for using public information, it "penalized him for using his *municipal email address* to obtain the information" for campaign purposes. Had Eberhart received the information in the normal course of his duties, or had he sought it for campaign purposes using his own private resources, there would be no violation of AS 15.13.145.[39]

### E. Substantial Compliance Standard Does Not Apply To AS 15.13.145.

Eberhart argues that the substantial compliance standard should apply to AS 15.13.145 and that he was in substantial compliance with the statutory requirements because even APOC agreed that his violation was trivial. Eberhart contends that our analysis in *Grimm v. Wagoner* supports his argument — we disagree. *Grimm* involved a candidate's compliance with financial disclosure rules, specifically AS 39.50.030

---

[37] *Id.*

[38] 978 P.2d at 605, 624.

[39] The APOC staff investigator who investigated the complaint testified at the hearing that a request sent from any other email address "would not have been a violation."

-14-                                                               7276

(disclosure requirements), not a candidate's improper use of government resources.[40] Under AS 39.50.060(b), a potential sanction for violating the disclosure requirements is election forfeiture. The severity of this potential sanction was a key part of our rationale for applying a substantial compliance standard in *Grimm*.[41] In this case the sanction applied to Eberhart's failure to strictly comply with AS 15.13.145 was a $37.50 fine. More serious violators face only increased fines,[42] not the forfeiture of election results like the candidate potentially faced in *Grimm*.[43] Because the severity of the sanctions faced does not compare to that in *Grimm*, adoption of the substantial compliance standard in this case is unnecessary.

Eberhart's second argument is that APOC failed to follow its own standing order on substantial compliance for filings. Eberhart points to a 2010 APOC order establishing that a filing under AS 15.13 or several other statutes is "substantially compliant" with the statute "if it involves no significant harm to the public."[44] APOC

---

[40] 77 P.3d 423, 425-27 (Alaska 2003).

[41] *Id.* at 431-33. The court particularly noted that the sanction of election forfeiture would be "inconsistent with the presumptive validity of election results" and "would thwart voter intent in contravention of Alaska law." *Id.* at 432. These concerns are not implicated in the instant case. *See* AS 39.50.060(b).

[42] *See* AS 15.13.390.

[43] 77 P.3d at 432-33.

[44] The criteria for no significant harm to the public established in the standing order are:

> The error creates no significant harm to the public when there are no aggravating factors and: 1. the dollar amount missing from a form or disclosure is *de minimus* [sic]; 2. the dollar amount of the information missing from a form or disclosure

(continued...)

rightly argues that the standing order "only address[es] disclosure requirements."

Eberhart assumes that this order applies to violations of the portions of AS 15.13 that do not relate to filings or disclosures, including the bar on the use of government resources to influence the outcome of an election in AS 15.13.145. But just as there is nothing that supports broadening *Grimm*'s substantial compliance holding beyond AS 39.50.060(b), there is nothing in APOC's standing order that would broaden its applicability beyond the specific reporting errors it describes.

Eberhart quotes from the APOC memorandum which accompanied the 2010 order, noting its statement that "APOC will not begin an investigation, initiate a complaint, or assess a fine or penalty if a filer has substantially complied with the filing requirements." But that sentence explicitly refers to filings, and begins: "*Under these regulations*, APOC will not begin . . ." (emphasis added). It follows a list of examples of APOC regulations that evidently explicitly referred to substantial compliance. Again, this material explicitly applies to filings.[45] Eberhart has not shown that the substantial compliance standard for filing disclosures applies to the statute he violated. Nor has he made an adequate argument that we should decide that it does.

---

[44]     (...continued)
is marginal and the filer self-reported the error; or 3. the missing or incomplete information is readily available to the public through another forum.

[45]     In his reply brief Eberhart asserts for the first time that the standing order should apply to his case because, although he was cited for using government resources in violation of AS 15.13.145, the fine was issued under AS 15.13.390(a), which he characterizes as "a civil penalty for late filing required reports." This issue has been abandoned because it was not raised until his reply brief. *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 599 (Alaska 2012).

**F.** **Eberhart's Arguments Related To APOC's Failure To Follow Established Procedural Rules Are Without Merit.**

Eberhart argues that APOC violated its own procedural rules and therefore should have dismissed the complaint. He then asserts that because APOC did not dismiss it, the superior court should have remanded the case with instructions to dismiss the complaint or follow the procedural rules as Eberhart understands them. He first argues that APOC staff were required to dismiss the complaint against him because the staff did not comply with the applicable regulation. He then argues that APOC actually did dismiss "the substance of [the] complaint" at the beginning of the hearing and that APOC therefore "consider[ed] allegations initiated by [itself]" in violation of APOC procedure.

**1.** **Whether APOC should have rejected the complaint because it was noncompliant is not judicially reviewable.**

APOC procedural regulations describe the required contents of a complaint that alleges a violation of AS 15.13.[46] Among other things, the complaint must provide "the statute or regulation alleged to be violated" and "the basis of the complainant's knowledge of the facts alleged."[47] Upon receiving a complaint, APOC staff must determine if it contains all of the required information; if the complaint does not comply with the requirements "the staff shall . . . reject the complaint."[48] The complainant may seek review of a rejection by APOC.[49]

---

[46]     2 AAC 50.870(b).

[47]     2 AAC 50.870(b)(3), (5).

[48]     2 AAC 50.870(c)-(d).

[49]     2 AAC 50.870(d).

Eberhart argues that the complaint did not provide either the statute or regulation allegedly violated or the basis of the complainant's knowledge of a violation, so the staff was wrong to investigate it. APOC argues that its staff's "decision to investigate [a] complaint is not judicially reviewable." The relevant regulation, 2 AAC 50.870(d), provides an appeal process for a staff decision *not* to investigate and AS 15.13.380(g) allows either a complainant or a respondent to appeal an APOC order finding a violation to the superior court. Alaska Statute 22.10.020(d) gives the superior court jurisdiction "in all matters appealed to it from a[n] . . . administrative agency when appeal is provided by law." But no statute or regulation provides for the appeal of a decision to investigate a complaint.[50] Like many other agency actions, it is not a "final decision of an administrative agency."[51] Because no such appeal right is provided by law, an appellate court does not have jurisdiction to consider such a claim.[52]

### 2. APOC's investigation into Eberhart's use of his city email was proper.

Eberhart also argues that APOC "dismissed the substance of [the]

---

[50]     Eberhart passingly argues in his reply brief that it was improper for APOC staff to expand the investigation to obtain five and half months of his city emails but does not identify what regulation this might have violated or explain how we could review that decision. Because the argument was not raised until his reply brief and is inadequately briefed we do not address it further. *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 599 (Alaska 2012) (explaining arguments that are cursorily briefed or not raised until a reply brief will be considered abandoned).

[51]     Alaska R. App. P. 601(b).

[52]     *Id.*; *see Kyte v. Stallings*, 334 P.3d 697, 699-700 (Alaska 2014) (evaluating whether a decision was clearly final and therefore started the 30-day appeal period under Appellate Rule 602(a)(2)); *Pruitt v. City of Seward*, 152 P.3d 1130, 1136 (Alaska 2007) (citing 2 RICHARD J. PIERCE, ADMINISTRATIVE LAW TREATISE § 15.15 (4th ed. 2002)) (discussing informal agency decisions that are not final).

complaint" and that the hearing therefore addressed only "allegations initiated by APOC." He argues that APOC regulations only allow APOC staff to "initiate an investigation" if staff "obtains information that, if true, would constitute a substantial violation of AS 15.13" or other statutes.[53]

The original complaint contained three broad allegations: (1) Eberhart used the corporate resources of his employer, specifically his work telephone, to campaign; (2) Eberhart used his city email address, a city resource, to campaign; and (3) Eberhart collected a salary from his employer for time spent campaigning. The first allegation was based on a telephone call between the complainant and Eberhart on April 3, 2013. After Eberhart moved to dismiss the complaint in its entirety, APOC granted the motion to dismiss with regard to the telephone conversation but denied the motion to dismiss with regard to the rest of the allegations. The allegation that Eberhart had used his city email address as his campaign contact was still before APOC. Eberhart's claim that APOC had "dismissed the substance of [the] complaint" is therefore incorrect.

Eberhart's related argument that the allegations addressed at the hearing were "initiated by APOC" hinges on his assertion that the original complaint to APOC did not allege that Eberhart had used his city email address to obtain copies of public records from the city clerk. This argument ignores the inherent nature of an investigation, which begins with known facts and seeks to develop and discover additional facts and evidence. It would be illogical for APOC to be empowered to investigate allegations but then only able to penalize an offending party for the specific misdeeds known to the complainant at the time of filing the complaint, regardless of how egregious more hidden conduct might have been. Eberhart has provided no argument or relevant authority to support such an unusual restriction on APOC's statutorily-

---

[53] 2 AAC 50.875(a).

granted power to investigate.[54]  We accordingly reject such a restriction of APOC's investigatory power.

### G.    APOC Did Not Violate The Deliberative Process Privilege.[55]

"The deliberative process privilege is an exception to the public records act intended to 'protect [] the mental processes of governmental decision-makers from interference.' "[56]  "[T]o establish a prima facie claim to this privilege in any given case, the government must show that the document whose disclosure is sought is an internal communication or one that the government directly solicited and that the communication is both predecisional and deliberative."[57]

Eberhart argued at the APOC hearing that "inquiring into the purpose of the email[s] invades [the] deliberative process" privilege and objected to being asked questions about whether he had used the materials received in his campaign or for official purposes.  APOC's order did not address Eberhart's privilege claim.  The superior court concluded that the issue was "moot, as [APOC] reached their conclusion to support the violation from the evidence presented by APOC staff."

---

[54]    *See* AS 15.13.030(7).

[55]    APOC asserts that Eberhart has waived arguing that the emails were privileged because he did not sufficiently raise and preserve the argument before APOC or before the superior court.  Because the argument is easily dispensed with we do not address APOC's waiver argument.

[56]    *Fuller v. City of Homer*, 113 P.3d 659, 660 n.3 (Alaska 2005) (*Fuller II*) (alteration in original) (quoting *Gwich'in Steering Comm. v. State, Office of the Governor*, 10 P.3d 572, 578 (Alaska 2000)).

[57]    *Fuller v. City of Homer*, 75 P.3d 1059, 1063 (Alaska 2003) (*Fuller I*) (citing *Gwich'in Steering Comm.*, 10 P.3d at 579, 581).

Eberhart compares the emails to documents that we held were protected by this privilege in *Gwich'in Steering Committee v. State, Office of the Governor*.[58] The documents at issue in that case related "to the governor's lobbying efforts to open the Arctic National Wildlife Refuge for oil exploration and drilling."[59] The documents described proposed lobbying strategies and media plans, as well as internal discussion of the proposed plans; we affirmed that all of the documents were both predecisional and deliberative.[60] But Eberhart does not explain why his emails are similar or why they should be protected; he merely asserts that "[t]here is little question that the communication . . . was an internal communication and that [it] was both predecisional and deliberative" and that he therefore "had a *prima facie* claim to deliberative process privilege." The burden is on the government, or government actor asserting privilege, to show that the communication is presumptively protected by the privilege.[61] Eberhart has not met this burden. His argument that his actions are protected by the deliberative process privilege fails.

## V.  CONCLUSION

We AFFIRM the superior court's decision affirming APOC's final order and civil penalty.

---

[58]  10 P.3d at 580-84.

[59]  *Id.* at 576.

[60]  *Id.* at 581-583.

[61]  *Fuller I*, 75 P.3d at 1063. Once the government establishes a prima facie claim of privilege, the burden shifts to the requesting party to demonstrate that the public's interest in disclosure outweighs the government's interest in confidentiality. *Id.*