*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMES M. STUDLEY, | ) | |
| | ) | Supreme Court No. S-15757 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-13-00669 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA PUBLIC OFFICES | ) | |
| COMMISSION, | ) | |
| | ) | No. 7148 – January 27, 2017 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Fred W. Triem, Petersburg, for Appellant. Joanne M. Grace, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I.    INTRODUCTION

A self-employed real estate broker ran as a candidate for local elective office. The broker sought a blanket exemption from Alaska's financial disclosure requirements to avoid reporting his clients' identities and the income earned from them. The Alaska Public Offices Commission denied the broker's request and assessed a $175

civil penalty for his failure to comply with the candidate reporting requirements. On appeal the superior court upheld the Commission's ruling. The broker now appeals the superior court's decision, contending the disclosure requirements violate his duty to maintain client confidentiality, infringe his clients' privacy rights under the Alaska Constitution, and impair several personal constitutional rights. We affirm the superior court's decision upholding the Commission's ruling.

## II.    FACTS AND PROCEEDINGS

In 2012 James Studley, a real estate broker operating through a self-owned corporation, ran for a borough assembly seat. As a candidate for public office Studley was subject to Alaska's financial disclosure laws, administered and enforced by the Alaska Public Offices Commission. He was required to file a Public Official Financial Disclosure Statement reporting the source of any income exceeding $1,000 earned during the prior calendar year and the nature of the services rendered.[1] Because Studley owned the corporation through which he operated, he was self-employed for purposes of the disclosure laws and so was required to report his actual client names as the income "source."[2]

Studley submitted his calendar year 2011 disclosure statement in July 2012 and amended it three times. On the line for identifying clients Studley provided no details, but he made notes essentially stating that he was prohibited by law from disclosing the information. Under a general entry he titled "Real Estate Sales" Studley reported "$20,000 - $50,000" in income. During this process Studley contacted the Commission and directed it to four real estate statutes that he said should provide "an

---

[1]    *See* AS 39.50.030(b)(1)(A)-(F).

[2]    *See* AS 39.50.200(a)(10).

exemption from disclosing confidential financial information."[3] Studley stated: "These statutes specifically prohibit release of any financial information regarding my clients or customers without prior written approval or at the direction of the judicial system by court order."

Campaign disclosure regulations permit a candidate to request a reporting exemption or a waiver.[4] The Commission asked Studley to provide the required information for making an exemption request, including the name, mailing address, and email address of the person making the request; the provision under which the exemption was sought; the reasons for requesting the exemption; and a certification that all facts given were true.[5] Studley responded by providing some of the requested information, including his name, mailing address, email address, and a certification that the information was true and accurate. Citing "AS 08-4145," he gave as the reason for his request that the statute does "not allow any financial disclosure or information that would be considered financially harmful to a client."[6]

---

[3] The four statutes he cited were: AS 08.88.071, outlining the Alaska Real Estate Commission's duties and powers and grounds for disciplinary sanctions; AS 08.88.081, providing, in its entirety, that "[t]he commission shall adopt regulations necessary to carry out the purposes of this chapter"; AS 08.88.171, listing real estate licensee eligibility standards; and AS 08.88.685, requiring real estate brokers to adopt various written policies and procedures.

[4] 2 Alaska Administrative Code (AAC) 50.821 (2012).

[5] *See* 2 AAC 50.821(a)(1)-(9).

[6] It was subsequently clarified that "08-4145" is not a statute number, but rather the designation on an Alaska Real Estate Commission pamphlet that real estate licensees are required to present to customers and clients outlining a licensee's duties to those consumers. The pamphlet explains that a licensee will "[n]ot disclose confidential information, even after the relationship ends, from or about you without written

(continued...)

In a subsequent exchange Studley provided the Commission a copy of the Alaska Real Estate Commission pamphlet he had referred to as "AS 08-4145" and stated that no information about a client may be disclosed without court order. Studley provided two hypothetical examples to illustrate how disclosing the existence or details of a broker-client relationship might harm a client. Studley's first example discussed how a buyer might be able to infer that a couple is divorcing from client disclosures and use that as negotiating leverage in a purchase; his second outlined privacy concerns for a person selling real property while filing for bankruptcy. He did not assert that these were actual client situations he faced.

Later that day Studley sent the Commission another response asserting that he was "not required" to file the disclosures because "I receive my money from my various owned companies and I have listed both of my companies that pay me my income." He explained that: "all of my clients are with contracts to my companies and not to me personally"; "Alaska real estate law requires a court order or subpoena before I (a Broker) can release confidential information"; and "the legal system seems to weigh towards protecting the personal rights of all Alaskans['] financial data."

The following week Commission staff denied Studley's exemption request. The Commission explained that the four statutes Studley cited "do not provide any statutory reason that would exempt you as a candidate[] from disclosing real estate transactions that provided you income." Noting that "the value of real estate transactions is a public process and your involvement and [c]ommissions from this public process

---

**6** (...continued)
permission, except under a subpoena or court order." The language from this pamphlet mirrors that of AS 08.88.620(4), stating that real estate licensees may "not disclos[e] confidential information from or about the represented person without written consent, except under a subpoena or another court order, even after termination of the licensee's relationship with the represented person."

[are] ascertainable already from other sources," the Commission concluded that the transactions did not "fall under a constitutionally protected zone of privacy." The Commission observed that "the public's right to know the sources of your income outweigh[s] any reason you may have to keep these matters private." The denial also informed Studley that he could appeal the staff's decision directly to the Commission's appointed members within 30 days.

Studley took no action to appeal. The Commission then sent him a "Notice of Penalty" informing him that civil penalties are assessed for filing incomplete disclosure statements, and that he was subject to fines accrued daily from the decision date until the election date. The penalty was $10 per day, for a total of $350. Studley was given 30 days to pay the penalty or appeal to the Commission.

Studley appealed the penalty, requesting a hearing and stating that he was "not allowed" to comply with the disclosure laws "on reporting contractual agreements." At the hearing the commissioners located a real estate statute defining "confidential information"[7] and took note of Studley's arguments that the required disclosures violated his clients' constitutional privacy rights.

The Commission later issued a "Final Order" ruling that none of the real estate statutes Studley cited prohibited the required disclosures. The Commission found that Studley "violated the reporting statute by not filing a complete [disclosure] report," but reduced his civil penalty to $175 because he was an "inexperienced filer." The order informed Studley that he could request reconsideration within 15 days and that he could appeal to the superior court within 30 days.

---

[7]     AS 08.88.695(2); *see infra* Section IV.B.3 (discussing applicability of AS 08.88.695(2)).

Studley requested reconsideration.[8] The Commission addressed Studley's request at a subsequent meeting, ultimately denying it for failure to provide a basis for reconsideration.

Studley had not been represented by an attorney during his Commission interactions; he retained counsel and filed an appeal with the superior court after the Commission denied his request for reconsideration. Studley cited the real estate statute establishing a licensee's duty to maintain a client's confidential information learned during representation,[9] and the statutory "confidential information" definition examined at his Commission hearing.[10] Studley also asserted that the required disclosures would violate his clients' constitutional privacy rights and would infringe on several of his own constitutional rights.

The superior court concluded that Studley "has not shown that he was called upon to disclose any confidential information" and that he "never made any specific assertion that any particular client's information should be kept confidential." The court rejected Studley's constitutional claims, explaining that "Studley did not demonstrate . . . that release of information about his clients would violate any of his clients' privacy rights [or that] his rights under any of the[ ] [asserted] constitutional provisions were violated." Observing that Studley "provided no basis upon which [the Commission] could have granted him an exemption," the court affirmed the Commission's decision.

---

[8] *See* 2 AAC 50.891(g) ("The commission may reconsider an order as provided in AS 44.62.540. . . . A request for reconsideration must state specific grounds for reconsideration.").

[9] AS 08.88.620(4).

[10] AS 08.88.695(2).

Studley now appeals the superior court's decision with two "principal questions" for our review. First, do "real estate regulations that require a broker *not* to release confidential client information conflict with the [Commission's] regulations that demand this disclosure by a broker who runs for public office?" (Emphasis in original.) Second, was Studley's "constitutional right of candidacy improperly conditioned upon relinquishment of his constitutional right of privacy and the rights of privacy of his clients[, or u]pon possible loss of his license and of his profession?"

## III.    STANDARD OF REVIEW

"When the superior court has acted as an intermediate court of appeal, we review the merits of the administrative agency's decision without deference to the superior court's decision."[11] "[W]e give deference to [an] agency's interpretation of a statute] so long as it is reasonable, when the interpretation at issue implicates agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions."[12] But we will substitute our own judgment for questions of law "when the statutory interpretation does not involve agency expertise, or the agency's specialized knowledge and experience would not be particularly probative."[13] "In such cases we 'adopt the rule of law that is most persuasive in light of precedent, reason, and

---

[11]    *Tolbert v. Alascom, Inc.*, 973 P.2d 603, 606-07 (Alaska 1999) (citing *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987)).

[12]    *Marathon Oil co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (citing *Matanuska-Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986)).

[13]    *Lakloey, Inc. v. Univ. of Alaska*, 141 P.3d 317, 320 (Alaska 2006) (quoting *Gunderson v. Univ. of Alaska, Fairbanks*, 922 P.2d 229, 233 (Alaska 1996)).

policy.' "[14] Questions of constitutional interpretation are also reviewed de novo under the substitution of judgment standard.[15]

## IV. DISCUSSION

### A. Candidates Must Report Sources And Amounts Of Income But May Seek An Exemption When Privacy Concerns Arise.

#### 1. Disclosure requirements

Under Alaska law a candidate for elective office, including municipal office, must file a statement disclosing "income sources and business interests."[16] A municipal candidate must disclose this information when declaring candidacy or submitting other required filings.[17] The statement must provide "sources of income over $1,000" for the preceding calendar year, including "each source of the income" and the corresponding "amount of income" earned from the source, which "may be stated in a range rather than as an exact amount."[18] A candidate is considered self-employed when the candidate owns a controlling interest in an income-deriving entity, such as a partnership or a corporation.[19] A self-employed candidate's source of income is the

---

[14]    *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1231 (Alaska 2003) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

[15]    *Brandal v. State, Commercial Fisheries Entry Comm'n*, 128 P.3d 732, 735 (Alaska 2006); *see also Beeson v. City of Palmer*, 370 P.3d 1084, 1088 (Alaska 2016) ("We review questions of constitutional law de novo." (citing *Anchorage v. Sandberg*, 861 P.2d 554, 557 (Alaska 1993))).

[16]    AS 39.50.020(a).

[17]    *Id.*

[18]    AS 39.50.030(b)(1); 2 AAC 50.685(c).

[19]    AS 39.50.200(10).

entity's individual "client or customer."[20]   Disclosure statements are available to the public.[21]

### 2.      Disclosure exemptions

A candidate required to file a disclosure statement may request exemptions from reporting.[22]   Among other items, a candidate may request to keep "the name of an individual who was a source of income" or "the amount of income" earned confidential.[23] "The person requesting any exemption has the burden of proving each fact necessary to show that an exemption . . . is applicable."[24]   A candidate may seek an exemption under 2 AAC 50.775(c)(1) when "prohibited by law . . . from reporting" the information, or under 2 AAC 50.775(c)(2) when disclosure "would violate rights of the source under state or federal statutes or constitutions."[25]   Although the superior court based its decision on a different provision,[26] both parties relied on these two provisions and we accept them as the relevant authorities for this appeal.

---

[20]      *Id.*

[21]      AS 39.50.050(c); *see also* 2 AAC 50.801(a) (providing for inspection and copies of reports, records, and other information in Commission's possession).

[22]      2 AAC 50.775(a).

[23]      *Id.*

[24]      *Id.*

[25]      2 AAC 50.775(c)(1), (2).

[26]      *See* 2 AAC 50.775(e) (providing for exemption requests when "state or federal law or court order requires the . . . information to be kept confidential").

**B.      Studley Did Not Demonstrate He Was Entitled To An Exemption.**

**1.      We regard Studley's assertions as arguments for an exemption.**

Studley argues that candidate disclosure requirements "compete" with his statutory duty as a real estate agent to keep client information confidential, and that reporting the information would violate his clients' privacy rights under the Alaska Constitution. Studley claims that his right to stand for elective office was conditioned upon the surrender of his right to practice as a real estate broker and that his equal protection rights were violated. He also contends he does not need to show that his clients' information is confidential on a "case-by-case" basis. We consider these contentions together as an argument that Studley was entitled to a financial disclosure reporting exemption.

**2.      Exemption requests must be supported by facts; hypothetical scenarios are insufficient.**

As a candidate requesting an exemption it was Studley's burden to "prov[e] each fact necessary" to show that a reporting exemption applied.[27] Contending that he "cannot know the circumstances of each client, [but] can envision or anticipate circumstances in which disclosure would be detrimental," Studley offers four "possible examples" where disclosure could be detrimental to a client.[28] Studley argues that such hypothetical examples should suffice for an exemption, quoting *Falcon v. Alaska Public*

---

[27]      2 AAC 50.775(a).

[28]      The four hypothetical clients Studley offers as examples are: (1) "a seller who anticipates a divorce or dissolution"; (2) "a buyer [with] a creditor who is looking for property on which to place a lien"; (3) "[t]he victim of a crime"; and (4) a buyer with an "interest in keeping the selling price . . . confidential."

*Offices Commission*[29] for the proposition that "a case-by-case determination would be excessively burdensome." Studley offered the Commission no facts pertaining to his own situation supporting a reporting exemption.

We conclude that Studley's hypothetical scenarios are an insufficient basis for an exemption from the financial disclosure requirement.[30] Under 2 AAC 50.775(a) "the burden of proving each fact necessary to show that an exemption . . . is applicable" is on the candidate seeking elective office. Hypothetical scenarios do not qualify as "fact[s] necessary to show that an exemption . . . is applicable."[31]

Studley was in the best position to investigate his clients' circumstances and present facts showing an applicable exemption. But there is no evidence that Studley tried to determine whether any client's name or commission amount could be legally protected from disclosure. Studley's case is distinguishable from *Falcon*; that case was decided before an exemption process existed, and real estate transactions have fewer privacy considerations than healthcare.[32] Because Studley offered no facts showing an applicable exemption with respect to any of his claims, he failed to meet his burden.

---

[29] 570 P.2d 469, 480 (Alaska 1977) (holding that absent regulations providing an exemption scheme, physicians are categorically exempt from "reporting the names of individual patients" in financial disclosure reports).

[30] Because the Commission has no agency expertise, specialized knowledge, or experience interpreting real estate confidentiality rules, we apply the substitution of judgment standard in making this determination. *See Lakloey, Inc. v. Univ. of Alaska*, 141 P.3d 317, 320 (Alaska 2006).

[31] *See* 2 AAC 50.775(a).

[32] *See Falcon*, 570 P.2d at 479-80.

-11-                                                                    **7148**

**3.** **Studley did not demonstrate that the required information was uniformly confidential and that disclosure was uniformly prohibited by law.**

Studley contends that he is under a statutory duty not to disclose confidential information, including client names and derived earnings. We consider this to be an argument that disclosure of a self-employed real estate agent's clients' information is always prohibited by law for purposes of Alaska's election disclosure regime.[33]

Alaska Statute 08.88.620(4) prohibits a broker from "disclosing confidential information from or about [a] represented person without written consent, except under a subpoena or another court order, even after termination of the . . . relationship."[34] "[C]onfidential information" is defined in AS 08.88.695(2) as "information from or concerning a person" that:

> (A) the licensee acquired during the course of the licensee's relationship as a licensee with the person;
>
> (B) the person reasonably expects to be kept confidential;
>
> (C) the person has not disclosed or authorized to be disclosed to a third party;
>
> (D) would, if disclosed, operate to the detriment of the person; *and*
>
> (E) the person is not obligated to disclose to the other party in a real estate transaction . . . .[35]

---

[33] *See* 2 AAC 50.775(a), (c)(1).

[34] AS 0.88.620(4).

[35] AS 08.88.695(2) (emphasis added). A real estate broker is considered a licensee in this context. *See* AS 08.88.695(7).

The legislature's conjunctive use of the word "and" indicates that all five conditions must be satisfied to meet the "confidential information" definition.[36]  Here Studley failed to make the required showing.[37]

Studley argues that a real estate broker's clients reasonably expect their names and the broker-client relationship to be kept confidential because Alaska is a "non-disclosure state" and the information "is not part of the public record."  He further contends that a candidate for elected office cannot be expected to determine whether clients disclosed his representation to third parties, which would render the information non-confidential under AS 08.88.695(2)(C).

But client names and real estate broker commissions are frequently disclosed to third parties.  The Commission observes that disclosure of a client's identity "is generally necessary to enter into a purchase contract of sale, execute a deed, and close the transaction."  And during the January 2013 Commission meeting Studley admitted that he reveals his commission amount directly to counter parties in real estate transactions.  Such disclosures are commonplace in land sale contracts, which generally include "the identity of the buyer and seller, the price to be paid, the time and manner of

---

[36]     *See Emp't Sec. Comm'n v. Wilson*, 461 P.2d 425, 428 (Alaska 1969) ("[W]e may assume that the legislature knew and understood the rules of grammar," and are "justified in relying on such rules in the interpretation of [Alaska] laws." (citing AS 01.10.040)).

[37]     We do not address all five elements of the definition because once we determine that one element is lacking, Studley's claim fails.  *See* AS 08.88.695(2).

payment, and the property to be transferred."[38]  Much of this information is also disclosed to third parties when real estate transactions are recorded.[39]

We do not suggest there can never be a transaction where a client's identity or the amount of the broker's commission is intended to be confidential.  But we will not assume that all real estate broker's commissions and clients' identities must be and are always confidential.  And because Studley has not shown that any of his clients' names or his derived income were previously undisclosed to third parties, we affirm the superior court's decision that he was not "prohibited by law . . . from reporting" this information to the Commission.[40]

Studley also argues that the "crux of the problem is that a broker cannot know for certain what information is detrimental to a client, or whether the release of information will not work a detriment to a client in the future."  He lists four "circumstances" in which he "can envision or anticipate" disclosures could be detrimental.[41]  But as noted earlier hypothetical scenarios do not show that disclosure would be detrimental to a real estate broker's actual clients.  Alaska Statute 08.88.695(2)

---

[38]     *Hall v. Add-Ventures, Ltd.*, 695 P.2d 1081, 1086 n.6 (Alaska 1985) (quoting *Custis v. Valley Nat'l Bank of Phx.*, 375 P.2d 558, 561 (Ariz. 1962)).

[39]     *See* AS 40.17.040 (establishing that a district recorder shall maintain an index system for instruments "so the public may find documents by location and by names of grantors and grantees").  Studley contends that "no Alaska statute or regulation *requires* a property owner to record a transaction."  But he does not suggest that his clients do not in fact do so.

[40]     2 AAC 50.775(c)(1); *see* AS 08.88.695(2)(C).

[41]     *See supra* note 27 (outlining Studley's four hypothetical scenarios).

plainly requires that a disclosure *actually* be detrimental for the information to be confidential.[42] The mere possibility of theoretical harm does not mean a harm exists.

Studley relies on *Falcon* to argue that his clients' "sensitive personal information" should be protected "from public disclosure."[43] In *Falcon* we held that physicians did not need to "report[] the names of individual patients" because of the "significant privacy interest" at stake in many physician-client relationships.[44] But unlike *Falcon* where "[e]ven visits to a general practitioner may cause particular embarrassment or opprobrium," we do not conclude that the disclosure of buyers and sellers of real estate will be similarly detrimental.[45] In this case there is no indication of broad classes of clients who must uniformly be protected from election disclosure laws, and AS 08.88.695(2) already provides a mechanism for protecting confidential information in individual circumstances. Because Studley has failed to show that disclosure would actually be detrimental to any of his clients, we affirm the superior court's decision that Studley was not asked "to disclose any confidential information."[46]

---

[42] *See* AS 08.88.695(2)(D) (requiring that the confidential information "*would*, if disclosed, operate to the detriment of the person" (emphasis added)); *see also Heller v. State, Dep't of Revenue*, 314 P.3d 69, 74 (Alaska 2013) ("The plainer the meaning of the statute, the more persuasive any legislative history to the contrary must be." (quoting *City of Dillingham v. CH2M Hill Nw., Inc.*, 873 P.2d 1271, 1276 (Alaska 1994))); *cf. id.* ("We give unambiguous statutory language its ordinary and common meaning . . . ." (citing *City of Dillingham*, 873 P.2d at 1276)).

[43] *Falcon v. Alaska Pub. Offices Comm'n*, 570 P.2d 469, 480 (Alaska 1977).

[44] *Id.*

[45] *Id.* at 479-80.

[46] *See* AS 08.88.695(2)(D).

### 4. Studley has not demonstrated that the disclosures would violate his clients' constitutional privacy rights.

In addition to his statutory argument Studley contends that disclosing his clients' names and derived income would violate his clients' constitutional privacy rights.[47] Studley again relies on *Falcon* to argue that his clients' personal information should be kept confidential.[48]

But just as with Studley's statutory argument, his constitutional privacy argument fails because he relies solely on generalized hypotheticals. If Studley had any specific client relationships where a constitutional right of privacy was a concern, it was his obligation to bring the facts of those relationships to the Commission's attention and request an exemption. But Studley brought no specific requests.

We held in *Falcon* that disclosing the identities of physicians' patients could not be required until the Commission promulgated regulations "provid[ing] a method for exempting certain classes of patients . . . or for determining whether certain patients fall within special or sensitive classes."[49] But the broker-client relationship is not like the physician-client relationship we addressed in *Falcon*, where because of "specialized practice[s], the disclosure of the patient's identity also reveals the nature of the treatment, and the particular type of treatment is one which patients would normally

---

[47] *See* Alaska Const. art. I, § 22 ("The right of the people to privacy is recognized and shall not be infringed."); 2 AAC 50.775(c)(2) (permitting candidates to seek an exemption when a disclosure "would violate rights of the source under [the] state . . . constitution[]").

[48] *See Falcon*, 570 P.2d at 479-80.

[49] *Id.* at 480.

seek to keep private."[50]  Studley does not present "classes of clients" who might have a common interest in privacy; he instead presents four unique circumstances that do not lend themselves to ready classification and are best dealt with on a case-by-case basis. And the Commission's regulations provide Studley with a method of preserving his clients' confidentiality.[51]  Because no blanket exemption exists, we affirm the superior court's rejection of Studley's clients' constitutional claims.

### C.    Studley's Remaining Personal Constitutional Claims Fail.

Studley also argues that his own constitutional right to privacy would be infringed by the required candidacy financial disclosures.  But the required disclosures are neither "personal" nor "intimate," and Studley, at least with respect to potential conflicts of interest, has "waived his right to privacy by 'voluntarily entering the public arena.' "[52]

Studley also asserts that he has been "whipsawed" by "dueling" requirements, arguing that his statutory duty of confidentiality irreconcilably competes with the candidate disclosure laws, setting an "unconstitutional condition" that impairs his constitutional right of candidacy.  He contends that his right to stand for election is infringed because abiding by the disclosure requirements could subject him to discipline, suspension, or loss of his broker's license.  Studley argues that this violates his equal protection and substantive due process rights and acts as a barrier to his candidacy.

But the constitutional rights of self-employed real estate brokers like Studley who run for public office are protected.  A broker may stand for elective office

---

[50]    *Id.*

[51]    *See* 2 AAC 50.775.

[52]    *Falcon*, 570 P.2d at 474 (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)).

by either making the required disclosures or proving an exemption applies.[53]   And Studley's right of candidacy was not impaired; he stood for election to the borough assembly and could have avoided any penalty by following the Commission's procedures. Studley's remaining personal constitutional arguments are all without merit. We affirm the superior court's decision on those issues.

## V.    CONCLUSION

We AFFIRM the superior court's decision affirming the Commission's final order and civil penalty.

---

[53]    2 AAC 50.775(a).