# SUPREME COURT OF THE UNITED STATES

DAVID THOMPSON, ET AL., *v.* HEATHER HEBDON,
EXECUTIVE DIRECTOR OF THE ALASKA
PUBLIC OFFICES COMMISSION, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 19–122.    Decided November 25, 2019

PER CURIAM.

Alaska law limits the amount an individual can contribute to a candidate for political office, or to an election-oriented group other than a political party, to $500 per year. Alaska Stat. §15.13.070(b)(1) (2018).  Petitioners Aaron Downing and Jim Crawford are Alaska residents.  In 2015, they contributed the maximum amounts permitted under Alaska law to candidates or groups of their choice, but wanted to contribute more.  They sued members of the Alaska Public Offices Commission, contending that Alaska's individual-to-candidate and individual-to-group contribution limits violate the First Amendment.

The District Court upheld the contribution limits and the Ninth Circuit agreed.  909 F. 3d 1027 (2018); *Thompson* v. *Dauphinais*, 217 F. Supp. 3d 1023 (Alaska 2016).  Applying Circuit precedent, the Ninth Circuit analyzed whether the contribution limits furthered a "sufficiently important state interest" and were "closely drawn" to that end.  909 F. 3d, at 1034 (quoting *Montana Right to Life Assn.* v. *Eddleman*, 343 F. 3d 1085, 1092 (2003); internal quotation marks omitted).  The court recognized that our decisions in *Citizens United* v. *Federal Election Comm'n* and *McCutcheon* v. *Federal Election Comm'n* narrow "the type of state interest that justifies a First Amendment intrusion on political contributions" to combating "actual quid pro quo corruption or its appearance."  909 F. 3d, at 1034 (citing *McCutcheon* v. *Fed-*

*eral Election Comm'n*, 572 U. S. 185, 206–207 (2014); *Citizens United* v. *Federal Election Comm'n*, 558 U. S. 310, 359–360 (2010)).  The court below explained that under its precedent in this area "the quantum of evidence necessary to justify a legitimate state interest is low: the perceived threat must be merely more than 'mere conjecture' and 'not . . . illusory.'"  909 F. 3d, at 1034 (quoting *Eddleman*, 343 F. 3d, at 1092; some internal quotation marks omitted). The court acknowledged that "*McCutcheon* and *Citizens United* created some doubt as to the continuing vitality of [this] standard," but noted that the Ninth Circuit had recently reaffirmed it.  909 F. 3d, at 1034, n. 2.

After surveying the State's evidence, the court concluded that the individual-to-candidate contribution limit "'focuses narrowly on the state's interest,' 'leaves the contributor free to affiliate with a candidate,' and 'allows the candidate to amass sufficient resources to wage an effective campaign,'" and thus survives First Amendment scrutiny.  *Id.*, at 1036 (quoting *Eddleman*, 343 F. 3d, at 1092; alterations omitted); see also 909 F. 3d, at 1036–1039.  The court also found the individual-to-group contribution limit valid as a tool for preventing circumvention of the individual-to-candidate limit.  See *id.*, at 1039–1040.

In reaching those conclusions, the Ninth Circuit declined to apply our precedent in *Randall* v. *Sorrell*, 548 U. S. 230 (2006), the last time we considered a non-aggregate contribution limit.  See 909 F. 3d, at 1037, n. 5.  In *Randall*, we invalidated a Vermont law that limited individual contributions on a per-election basis to: $400 to a candidate for Governor, Lieutenant Governor, or other statewide office; $300 to a candidate for state senator; and $200 to a candidate for state representative.  JUSTICE BREYER's opinion for the plurality observed that "contribution limits that are too low can . . . harm the electoral process by preventing challengers from mounting effective campaigns against incumbent officeholders, thereby reducing democratic accountability."

Per Curiam

548 U. S., at 248–249; see also *id.*, at 264–265 (Kennedy, J., concurring in judgment) (agreeing that Vermont's contribution limits violated the First Amendment); *id.*, at 265–273 (THOMAS, J., joined by Scalia, J., concurring in judgment) (agreeing that Vermont's contribution limits violated the First Amendment while arguing that such limits should be subject to strict scrutiny). A contribution limit that is too low can therefore "prove an obstacle to the very electoral fairness it seeks to promote." *Id.*, at 249 (plurality opinion).*

In *Randall*, we identified several "danger signs" about Vermont's law that warranted closer review. *Ibid.* Alaska's limit on campaign contributions shares some of those characteristics. First, Alaska's $500 individual-to-candidate contribution limit is "substantially lower than . . . the limits we have previously upheld." *Id.*, at 253. The lowest campaign contribution limit this Court has upheld remains the limit of $1,075 per two-year election cycle for candidates for Missouri state auditor in 1998. *Id.*, at 251 (citing *Nixon* v. *Shrink Missouri Government PAC*, 528 U. S. 377 (2000)). That limit translates to over $1,600 in today's dollars.

———————

*The court below declined to consider *Randall* "because no opinion commanded a majority of the Court," 909 F. 3d, at 1037, n. 5, instead relying on its own precedent predating *Randall* by three years. Courts of Appeals from ten Circuits have, however, correctly looked to *Randall* in reviewing campaign finance restrictions. See, *e.g.*, *National Org. for Marriage* v. *McKee*, 649 F. 3d 34, 60–61 (CA1 2011); *Ognibene* v. *Parkes*, 671 F. 3d 174, 192 (CA2 2012); *Preston* v. *Leake*, 660 F. 3d 726, 739–740 (CA4 2011); *Zimmerman* v. *Austin*, 881 F. 3d 378, 387 (CA5 2018); *McNeilly* v. *Land*, 684 F. 3d 611, 617–620 (CA6 2012); *Illinois Liberty PAC* v. *Madigan*, 904 F. 3d 463, 469–470 (CA7 2018); *Minnesota Citizens Concerned for Life, Inc.* v. *Swanson*, 640 F. 3d 304, 319, n. 9 (CA8 2011), rev'd in part on other grounds, 692 F. 3d 864 (2012) (en banc); *Independence Inst.* v. *Williams*, 812 F. 3d 787, 791 (CA10 2016); *Alabama Democratic Conference* v. *Attorney Gen. of Ala.*, 838 F. 3d 1057, 1069–1070 (CA11 2016); *Holmes* v. *Federal Election Comm'n*, 875 F. 3d 1153, 1165 (CADC 2017).

Alaska permits contributions up to 18 months prior to the general election and thus allows a maximum contribution of $1,000 over a comparable two-year period. Alaska Stat. §15.13.074(c)(1). Accordingly, Alaska's limit is less than two-thirds of the contribution limit we upheld in *Shrink*.

Second, Alaska's individual-to-candidate contribution limit is "substantially lower than . . . comparable limits in other States." *Randall*, 548 U. S., at 253. Most state contribution limits apply on a per-election basis, with primary and general elections counting as separate elections. Because an individual can donate the maximum amount in both the primary and general election cycles, the per-election contribution limit is comparable to Alaska's annual limit and 18-month campaign period, which functionally allow contributions in both the election year and the year preceding it. Only five other States have any individual-to-candidate contribution limit of $500 or less per election: Colorado, Connecticut, Kansas, Maine, and Montana. Colo. Const., Art. XXVIII, §3(1)(b); 8 Colo. Code Regs. 1505–6, Rule 10.17.1(b)(2) (2019); Conn. Gen. Stat. §9–611(a)(5) (2017); Kan. Stat. Ann. §25–4153(a)(2) (2018 Cum. Supp.); Me. Rev. Stat. Ann., Tit. 21–A, §1015(1) (2018 Cum. Supp.); Mont. Code Ann. §§13–37–216(1)(a)(ii), (iii) (2017). Moreover, Alaska's $500 contribution limit applies uniformly to all offices, including Governor and Lieutenant Governor. Alaska Stat. §15.13.070(b)(1). But Colorado, Connecticut, Kansas, Maine, and Montana all have limits above $500 for candidates for Governor and Lieutenant Governor, making Alaska's law the most restrictive in the country in this regard. Colo. Const., Art. XXVIII, §3(1)(a)(I); 8 Colo. Code Regs. 1505–6, Rule 10.17.1(b)(1)(A); Conn. Gen. Stat. §§9–611(a)(1), (2); Kan. Stat. Ann. §25–4153(a)(1); Me. Rev. Stat. Ann., Tit. 21–A, §1015(1); Mont. Code Ann. §13–37–216(1)(a)(i).

Third, Alaska's contribution limit is not adjusted for inflation. We observed in *Randall* that Vermont's "failure to

index limits means that limits which are already suspiciously low" will "almost inevitably become too low over time." 548 U. S., at 261. The failure to index "imposes the burden of preventing the decline upon incumbent legislators who may not diligently police the need for changes in limit levels to ensure the adequate financing of electoral challenges." *Ibid.* So too here. In fact, Alaska's $500 contribution limit is the same as it was 23 years ago, in 1996. 1996 Alaska Sess. Laws ch. 48, §10(b)(1).

In *Randall*, we noted that the State had failed to provide "any special justification that might warrant a contribution limit so low." 548 U. S., at 261. The parties dispute whether there are pertinent special justifications here.

In light of all the foregoing, the petition for certiorari is granted, the judgment of the Court of Appeals is vacated, and the case is remanded for that court to revisit whether Alaska's contribution limits are consistent with our First Amendment precedents.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

DAVID THOMPSON, ET AL., *v.* HEATHER HEBDON,
EXECUTIVE DIRECTOR OF THE ALASKA
PUBLIC OFFICES COMMISSION, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 19–122.   Decided November 25, 2019

Statement of JUSTICE GINSBURG.

I do not oppose a remand to take account of *Randall* v. *Sorrell*, 548 U. S. 230 (2006). I note, however, that Alaska's law does not exhibit certain features found troublesome in Vermont's law. For example, unlike in Vermont, political parties in Alaska are subject to much more lenient contribution limits than individual donors. Alaska Stat. §15.13.070(d) (2018); see *Randall*, 548 U. S., at 256–259. Moreover, Alaska has the second smallest legislature in the country and derives approximately 90 percent of its revenues from one economic sector—the oil and gas industry. As the District Court suggested, these characteristics make Alaska "highly, if not uniquely, vulnerable to corruption in politics and government." *Thompson* v. *Dauphinais*, 217 F. Supp. 3d 1023, 1029 (Alaska 2016). "[S]pecial justification" of this order may warrant Alaska's low individual contribution limit. See *Randall*, 548 U. S., at 261.