*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALASKA PUBLIC OFFICES COMMISSION, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) ) |
| DONNA PATRICK, JAMES K. BARNETT, and JOHN P. LAMBERT, | ) ) ) ) |
| Respondents. | ) ) ) |

Supreme Court No. S-17649

Superior Court No. 3AN-18-05726 CI

O P I N I O N

No. 7551 – September 3, 2021

Petition for Review from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Laura Fox, Senior Assistant Attorney General, Anchorage, and Clyde "Ed" Sniffen, Jr., Acting Attorney General, Juneau, for Petitioner. Jason Harrow and Lawrence Lessig, Equal Citizens, Los Angeles, California, and Elizabeth Hodes and M. Scott Broadwell, Davis Wright Tremaine LLP, Anchorage, for Respondents.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Borghesan, Justice, not participating.]

CARNEY, Justice.

## I.    INTRODUCTION

In 2012 the Alaska Public Offices Commission (APOC) issued an advisory opinion stating that the contribution limits in Alaska's campaign finance law are unconstitutional as applied to contributions to independent expenditure groups. In 2018 three individuals filed complaints with APOC alleging that independent expenditure groups had exceeded Alaska's contribution limits. APOC declined to enforce the contribution limits based on its advisory opinion. The individuals appealed to the superior court, which reversed APOC's dismissal of the complaints and ordered APOC to reconsider its advisory opinion in light of a recent Ninth Circuit Court of Appeals decision. APOC appealed, arguing that it should not be required to enforce laws it views as unconstitutional and that its constitutional determination is correct. Because it was error to reverse APOC's dismissal of the complaints, we reverse the superior court's order.

## II.    FACTS AND PROCEEDINGS

### A.    Alaska's Campaign Finance Laws

Alaska's campaign finance laws distinguish between campaign contributions — that is, payments to a candidate, political party, or other group for the purpose of influencing an election — and campaign expenditures, which are transactions that secure goods or services to influence an election.[1] For example, an individual's payment to a political party would be a contribution; if the party then spent that money on a political advertisement, the party's spending would be an expenditure.[2]

---

[1]    *See* AS 15.13.400(4) (defining "contribution"); AS 15.13.400(7) (defining "expenditure").

[2]    *See Buckley v. Valeo*, 424 U.S. 1, 21-23 (1976), *superseded by statute on other grounds as stated in McConnell v. FEC*, 540 U.S. 93, 120-22 (2003) (contrasting

(continued...)

Expenditures can be either coordinated or independent; an "independent expenditure" is one "made without the direct or indirect consultation or cooperation with, or at the suggestion or the request of, or with the prior consent of, a candidate, a candidate's campaign treasurer or deputy campaign treasurer, or another person acting as a principal or agent of the candidate."[3] At issue in this case is AS 15.13.070, the campaign finance law that limits campaign contributions to candidates, groups, and parties.

In January 2010 the United States Supreme Court issued a landmark decision in *Citizens United v. Federal Election Commission*, striking down restrictions on independent expenditures by corporations as an unconstitutional restriction on free speech and holding that "*quid pro quo* corruption" is the only form of corruption that could be targeted by campaign finance limits.[4] *Citizens United* did not directly address restrictions on contributions to independent expenditure groups.[5]

In February 2010 Alaska's then-Attorney General Dan Sullivan prepared a memorandum analyzing the impact of *Citizens United* on Alaska campaign finance election laws. The memorandum concluded that Alaska's prohibitions on independent expenditures by corporations and labor unions were likely unconstitutional but that its laws regulating "contributions to candidates, coordinated expenditures, disclaimers, and disclosures are not directly affected."

---

[2] (...continued) campaign expenditures with campaign contributions in the federal context).

[3] AS 15.13.400(11).

[4] 558 U.S. 310, 359, 365 (2010).

[5] We use "independent expenditure groups" to refer to groups that make *only* independent expenditures. A group that makes independent expenditures as well as contributions is not an independent expenditure group.

In 2012 APOC issued a unanimous advisory opinion at the request of a group that sought to "take in unlimited contributions from the public to make independent expenditures only." APOC's advisory opinion stated that "contributions to [groups] are currently limited by Alaska's campaign finance laws. However, it appears to APOC staff that the United States Supreme Court's decision in *Citizens United v. FEC* has potentially rendered these restrictions unconstitutional as applied to groups that make only independent expenditures." APOC's advisory opinion cited several federal cases which had overturned limits on contributions to independent expenditure groups and concluded, "APOC Staff recommends that [the group's] proposed contribution activity be allowed because the statutory limitation to that activity may be unconstitutional."

B.      Commission Proceedings

In January 2018 Donna Patrick, James K. Barnett, and John P. Lambert (collectively Patrick) filed identical complaints with APOC against two independent expenditure groups. The complaints alleged that the groups had accepted contributions from individuals and groups in excess of the limits imposed by AS 15.13.070(b)-(c). Subsection (b) of the statute limits contributions from individuals to groups, while subsection (c) limits contributions from groups to other groups.

APOC's staff rejected the complaints because they "concern[ed] transactions and activity described and indistinguishable from the activity in an approved advisory opinion" and cited its 2012 advisory opinion. Patrick requested that APOC review its staff's decision.

APOC considered Patrick's request at its February 2018 meeting. Patrick argued that the advisory opinion was incorrect and should be reconsidered, but APOC's staff attorney argued that it was still valid. In March APOC issued an order affirming the denial of Patrick's complaints. It cited AS 15.13.374(e)(1)-(2), which prohibits

APOC from considering a complaint about activities approved in an advisory opinion,[6] and concluded that the 2012 advisory opinion prevented it from considering Patrick's complaints.

## C.    Administrative Appeal

Patrick appealed APOC's decision to the superior court, arguing that the contribution limits were constitutional because the Framers of the United States Constitution had a broader view of corruption than the quid pro quo corruption identified in *Citizens United*. The superior court allowed Patrick to present expert testimony on the Framers' understanding of corruption, which Patrick argued was key to her position that the contribution limits in AS 15.13.070 are constitutional as applied to independent expenditure groups. The court heard testimony from Patrick's expert witnesses in October 2018.

In November 2019 the superior court reversed APOC's dismissal of the complaints and remanded for APOC to consider the complaints in light of a Ninth Circuit decision, *Thompson v. Hebdon*.[7] The *Thompson* court upheld Alaska's limit on individual contributions to all groups, but the Supreme Court later vacated the decision.[8]

---

[6]    AS 15.13.374(e) states, in relevant part: "A complaint under AS 15.13.380 may not be considered about a person involved in a transaction or activity that (1) was described in an advisory opinion approved under (d) of this section; [or] (2) is indistinguishable from the description of an activity that was approved in an advisory opinion . . . ."

[7]    909 F.3d 1027 (9th Cir. 2018), *judgment vacated*, 140 S. Ct. 348 (2019).

[8]    *Thompson v. Hebdon*, 140 S. Ct. at 351 (2019).

On remand the Ninth Circuit recently struck down that contribution limit as unconstitutional.[9]

The superior court also "encourage[d] all parties to seek immediate review," recommended that we grant review, and declined to rule on the constitutionality of AS 15.13.070. APOC petitioned for review, which we granted. We ordered the parties to address both the underlying constitutional issue and APOC's authority to decline to enforce a law it deems unconstitutional.

APOC argues that it was prevented by statute from considering complaints concerning activity approved in an advisory opinion, that its advisory opinion holding AS 15.13.070 unconstitutional as applied was correct, and that it has discretion to refuse to enforce laws it considers unconstitutional. Patrick agrees that APOC had authority to decline to enforce a law it determined was unconstitutional, but argues that the law is constitutional based on a novel originalist interpretation of the Constitution that the Supreme Court has not considered.

## III.  STANDARD OF REVIEW

"Constitutional issues are questions of law subject to independent review."[10] "We . . . substitute our own judgment for" the agency's when deciding questions of law "[w]hen the statutory interpretation does not involve agency expertise, or the agency's specialized knowledge and experience would not be particularly probative."[11]

---

[9]     *Thompson v. Hebdon*, No. 17-35019, 2021 WL 3235775, at \*12 (9th Cir. July 30, 2021).

[10]     *Eberhart v. Alaska Pub. Offs. Comm'n*, 426 P.3d 890, 894 (Alaska 2018) (quoting *Patterson v. GEICO Gen. Ins. Co.*, 347 P.3d 562, 568 (Alaska 2015)).

[11]     *Id.* (quoting *Studley v. Alaska Pub. Offs. Comm'n*, 389 P.3d 18, 22 (Alaska (continued...)

## IV.    DISCUSSION

The superior court declined to decide whether Alaska's contribution limit is constitutional as applied to independent expenditure groups.  Although neither this court nor the Supreme Court has addressed the issue, APOC argues that limits on contributions to independent expenditure groups are unconstitutional in light of *Citizens United* and subsequent federal appellate cases.  Patrick acknowledges that "a line of federal appellate cases" has held that limiting such contributions is unconstitutional but argues that those "cases were wrongly decided because the courts . . . were not presented with evidence about the original understanding of the term 'corruption.' "  We are not persuaded by Patrick's argument and hold that AS 15.13.070's limits on contributions to independent expenditure groups are unconstitutional.

### A.    *Thompson v. Hebdon* **Is Not Dispositive.**

The superior court based its decision on the original Ninth Circuit decision in *Thompson*.  But even before *Thompson* was overturned, the superior court's reliance on it was misplaced.  *Thompson* concerns the constitutionality of Alaska's contribution limits in general; this case addresses the constitutionality of those contribution limits only as applied to independent expenditure groups.[12]  There is only partial overlap between

---

[11]     (...continued)
2017)).  If "the interpretation at issue implicat[ed] agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions," we would "give deference to [the] agency's interpretation of a statute so long as it is reasonable." *Id.* (quoting *Studley*, 389 P.3d at 22).  In this case the agency's expertise is not implicated.

[12]     2021 WL 3235775, at *3 (describing parties and challenges).

the contribution limits addressed by *Thompson* and the ones at issue in this case.[13] And "[a]n as-applied [constitutional] challenge requires evaluation of the facts of the particular case in which the challenge arises."[14]

More relevant to this case are two other Ninth Circuit cases in which the court indicated that contribution limits in other states were unconstitutional as applied to independent expenditure groups.[15] Because the issue in this case is the more precise question of the constitutionality of contribution limits as applied to independent expenditure groups, those cases are more pertinent to our analysis. Indeed, APOC has raised a concern that if it is required to prosecute Patrick's complaints, it will be placed in the "impossible position" of having "to take an action that the Ninth Circuit has held unconstitutional."

**B.** **Federal Precedent Overwhelmingly Suggests That Limits On Contributions To Independent Expenditure Groups Are Unconstitutional.**

The Supreme Court has yet to address whether limits on contributions to independent expenditure groups are unconstitutional, but it has created a legal framework

---

[13] This case concerns Alaska's individual-to-group and group-to-group contribution limits. Although *Thompson* addresses the individual-to-group contribution limit, it does not address the group-to-group contribution limit. *Id* at \*3 (listing challenged provisions).

[14] *Dapo v. State, Off. of Child.'s Servs.*, 454 P.3d 171, 180 (Alaska 2019) (alteration in original) (quoting *Kyle S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 309 P.3d 1262, 1268 (Alaska 2013)).

[15] *See Long Beach Area Chamber of Com. v. City of Long Beach*, 603 F.3d 684, 698 (9th Cir. 2010); *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1121 (9th Cir. 2011), *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019).

to analyze the constitutionality of campaign finance laws. In *Buckley v. Valeo*, the Court held that a law limiting campaign contributions will be upheld if it furthers a sufficiently important state interest and is closely drawn to serve that interest,[16] but a law limiting expenditures must "satisfy the exacting scrutiny applicable to limitations on core First Amendment rights of political expression."[17] The Court held that preventing corruption and the appearance of corruption is a sufficiently important state interest.[18] In *Citizens United* the Court clarified that the anti-corruption interest identified in *Buckley* is "limited to *quid pro quo* corruption."[19] The Court struck down a law that prohibited corporate independent expenditures, holding "that independent expenditures . . . do not give rise to corruption or the appearance of corruption."[20] The Court reiterated this framework in *McCutcheon v. FEC*, where it noted that the only legitimate governmental interest it had identified for restricting campaign finances was "preventing corruption or the appearance of corruption" and emphasized that "Congress may target only a specific type of corruption — '*quid pro quo*' corruption."[21]

Two rationales underlie the Court's different treatment of campaign contributions and independent expenditures. First, the Court has held that contribution limits are a "lesser restraint" on political speech than expenditure limits and therefore

---

[16] 424 U.S. 1, 25 (1976), *superseded by statute on other grounds as stated in McConnell v. FEC*, 540 U.S. 93, 120-22 (2003).

[17] *Id.* at 44-45.

[18] *Id.* at 26-29 (plurality opinion) (upholding $1,000 contribution limit).

[19] *Citizens United v. FEC*, 558 U.S. 310, 359 (2010).

[20] *Id.* at 357.

[21] 572 U.S. 185, 206-07 (2014).

subject to less exacting review.[22]  Second, the Court has reasoned that, unlike contributions, independent expenditures are not prearranged or coordinated with a campaign, which "alleviates the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate."[23]

APOC argues that *Citizens United* calls into question the constitutionality of limits on contributions to independent expenditure groups because, if independent expenditures themselves do not give rise to corruption or its appearance, it is difficult to argue that contributions to groups that make only independent expenditures give rise to corruption or its appearance.  A number of federal courts, including the Ninth Circuit, have come to the same conclusion.  Shortly after *Citizens United*, the D.C. Circuit Court of Appeals decided in *SpeechNow.org v. FEC* that "contributions to groups that make only independent expenditures . . . cannot corrupt or create the appearance of corruption" and therefore "that the government has no anti-corruption interest in limiting contributions to an independent expenditure group."[24]  The Ninth Circuit held that a city ordinance prohibiting groups from making independent expenditures if they received contributions above certain amounts was unconstitutional as applied to political action

---

[22]     *Id.* at 197 (noting that expenditure limits are subject to exacting scrutiny while campaign contributions are subject to "a lesser but still 'rigorous standard of review' " (quoting *Buckley*, 424 U.S. at 29)); *see also Buckley*, 424 U.S. at 20-21 (reasoning that contribution limits are less restrictive than expenditure limits because "[a] contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support").

[23]     *Citizens United*, 558 U.S. at 357 (quoting *Buckley*, 424 U.S. at 47).

[24]     599 F.3d 686, 694-95 (D.C. Cir. 2010).  Because the D.C. Circuit found no legitimate government interest, it declined to decide which standard of review to apply, holding that "[n]o matter which standard of review governs . . . the limits on contributions to [an independent expenditure group] cannot stand."  *Id.* at 696.

committees that made only independent expenditures.[25] The Second,[26] Fourth,[27] Fifth,[28] Seventh,[29] and Tenth Circuit[30] Courts of Appeals have reached similar conclusions. The Second Circuit noted that "few contested legal questions are answered so consistently by so many courts and judges."[31]

---

[25] *Long Beach Area Chamber of Com. v. City of Long Beach*, 603 F.3d 684, 698 (9th Cir. 2010). The Ninth Circuit later relied on this precedent to uphold a preliminary injunction against enforcement of a similar law. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1121 (9th Cir. 2011), *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019).

[26] *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (noting in preliminary injunction context that "[f]ew contested legal questions are answered so consistently by so many courts and judges").

[27] *See N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 293 (4th Cir. 2008) (observing that independent expenditure groups are "furthest removed" from candidates and political action committees).

[28] *See Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 537-40 (5th Cir. 2013) (upholding a preliminary injunction on the basis that a law limiting contributions to independent expenditure groups was "incompatible with the First Amendment").

[29] *See Wisc. Right to Life State PAC v. Barland*, 664 F.3d 139, 155 (7th Cir. 2011) (holding $10,000 annual contribution cap unconstitutional as applied to independent expenditure committees).

[30] *See Republican Party of N.M. v. King*, 741 F.3d 1089, 1103 (10th Cir. 2013) (affirming grant of preliminary injunction and holding that political committees not formally affiliated with a party or candidate "may receive unlimited contributions for independent expenditures").

[31] *N.Y. Progress & Prot. PAC*, 733 F.3d at 488.

Although we are not bound by federal circuit court decisions,[32] we agree with their reasoning. Given the Supreme Court's holding that preventing quid pro quo corruption and its appearance is the only legitimate governmental interest for campaign finance regulations and its holding that independent expenditures do not give rise to quid pro quo corruption or its appearance,[33] there is no logical rationale for limiting contributions to independent expenditure groups. If anything, contributions to such groups are *more* attenuated from the possibility of quid pro quo corruption than the expenditures themselves. There is no logical scenario in which making a contribution to a group that will then make an expenditure is more prone to quid pro quo corruption than the expenditure itself. In light of *Citizens United*'s holding that independent expenditures "do not give rise to corruption or the appearance of corruption,"[34] contribution limits to independent expenditure groups would not withstand even the lower level of scrutiny applied to contribution limits.[35]

---

[32]    *See Native Vill. of Tununak v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 334 P.3d 165, 175 (Alaska 2014) ("We are 'not bound by decisions of federal courts other than the United States Supreme Court on questions of federal law.'" (quoting *Totemoff v. State*, 905 P.2d 954, 963 (Alaska 1995))).

[33]    *Citizens United v. FEC*, 558 U.S. 310, 357-59 (2010).

[34]    *Id.*

[35]    *See Long Beach Area Chamber of Com. v. City of Long Beach*, 603 F.3d 684, 693 (9th Cir. 2010) (holding that appeal does not turn on whether limit on contributions to independent expenditure groups is classified as contribution limit or expenditure limit because statute "does not withstand scrutiny under the constitutional standards applicable to either type of campaign finance regulation").

**C. Patrick's Argument Fails Because It Is Based On The Assumption That The U.S. Supreme Court Will Overrule Its Decision.**

Patrick does not dispute that federal courts have consistently held that limits on contributions to independent expenditure groups are unconstitutional. Patrick instead argues that those cases were wrongly decided. Patrick agrees that if the government may guard only against quid pro quo corruption, then "Alaska's law would not stand." But Patrick contends that the Supreme Court has never been presented with the argument that the government may permissibly use campaign finance laws to protect against forms of corruption other than individual corruption. As a result, Patrick says, there is still an opportunity for the Court to embrace broader conceptions of corruption held by the Framers of the Constitution, specifically the concept of "institutional corruption."

Patrick asserts that the Framers originally intended to guard against not only individual corruption but also "institutional corruption" or "structural corruption." Indeed, Patrick argues, "institutional corruption was the most important [consideration] . . . as they developed their constitutional design." Patrick argues that the Framers focused on "the structure of incentives allowed to evolve within institutions . . . . [because i]nstitutional corruption occurs when those incentives undermine the intended manner in which those institutions were meant to function." And Patrick points to empirical evidence that unregulated campaign finance leads to institutional corruption by making politicians dependent on, and therefore responsive to, a small number of major donors rather than the population as a whole.

Patrick then posits that those justices who subscribe to an originalist interpretation of the Constitution should adopt a more limited understanding of judges' roles in protecting First Amendment rights because protecting First Amendment rights was originally viewed as the province of legislators. Although Patrick acknowledges

that modern First Amendment jurisprudence does not reflect an originalist understanding, Patrick believes the originalists on the Court should nonetheless "constrain judicial discretion by fixing the meaning of the First Amendment doctrine to an original understanding of the concepts deployed."

Patrick compares this case to *District of Columbia v. Heller*,[36] arguing that in that case "the Court remade the scope of the Second Amendment" contrary to an earlier decision because the government's brief in the earlier decision "provided scant discussion of the history of the Second Amendment"[37] and "presented . . . no counter-discussion."[38] Patrick argues that the Court could similarly revise its understanding of the Constitution in this case in light of historical evidence not previously brought to its attention.

Patrick's historical argument may be particularly apt in Alaska, which "has the second smallest legislature in the country and derives approximately 90 percent of its revenues from one economic sector,"[39] making the state "highly, if not uniquely, vulnerable to corruption in politics and government."[40] Patrick's argument essentially asks us to ignore Supreme Court precedent in the hope that the Court will reverse itself.

---

[36]  554 U.S. 570 (2008).

[37]  *Id.* at 623-24.

[38]  *Id.* at 624.

[39]  *Thompson v. Hebdon*, 140 S. Ct. 348, 351-52 (2019) (Ginsburg, J., concurring).

[40]  *Id.* at 352 (quoting *Thompson v. Dauphinais*, 217 F. Supp. 3d 1023, 1029 (D. Alaska 2016)).

But the Court has clearly held that "while preventing corruption or its appearance is a legitimate objective, Congress may target only a specific type of corruption — '*quid pro quo*' corruption."[41] Similarly, "because the Government's interest in preventing the appearance of corruption is equally confined to the appearance of *quid pro quo* corruption, the Government may not seek to limit the appearance of mere influence or access."[42] And "independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption."[43] Patrick's argument that corruption should be defined more broadly than quid pro quo corruption is not new.[44] The dissent in *McCutcheon v. FEC* made historical and structural arguments for a broader view of corruption,[45] and the plurality specifically rejected that approach.[46]

---

[41]    *McCutcheon v. FEC*, 572 U.S. 185, 207 (plurality opinion) (2014).

[42]    *Id.* at 208.

[43]    *Citizens United*, 558 U.S. at 357.

[44]    *See, e.g.*, *McCutcheon*, 572 U.S. at 235 (Breyer, J., dissenting) ("The plurality's first claim — that large aggregate contributions do not 'give rise' to 'corruption' — is plausible only because the plurality defines 'corruption' too narrowly.").

[45]    *Id.* at 236-37 (discussing structural concerns of the Framers and arguing that "the First Amendment advances not only the individual's right to engage in political speech, but also the public's interest in preserving a democratic order in which collective speech *matters*" (emphasis in original)).

[46]    *See id.* at 208 (plurality opinion) ("The dissent advocates a broader conception of corruption . . . .").

While it is conceivable that the Supreme Court could overrule *Citizens United* in light of Patrick's historical analysis, we are bound by the Court's current interpretation of the federal Constitution. We will not rule otherwise based on a prediction that the Court will reverse itself.[47] Because the logic of Supreme Court precedent requires us to conclude that limits on contributions to independent expenditure groups are unconstitutional, AS 15.13.070's contribution limits are unconstitutional as applied to contributions to independent expenditure groups.[48]

V.    **CONCLUSION**

The superior court's decision is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

---

[47]    *See Fam. Sec. Life Ins. Co. v. Daniel*, 79 F. Supp. 62, 69 (E.D.S.C. 1948), *rev'd on other grounds*, 336 U.S. 220 (1949) ("We are firmly of the opinion that if the decisions of the Supreme Court are to be reversed, that function should be reserved to the Supreme Court itself.").

[48]    Because the 2012 advisory opinion was correct, we need not address APOC's argument that it was bound by the advisory opinion due to the "safe harbor" provisions in AS 15.13.374(e)(2). And Patrick does not challenge APOC's authority to decline to enforce a law it deemed unconstitutional. Because the parties do not dispute that issue, we decline to decide it. *See Clark v. Mun. of Anchorage*, 777 P.2d 1159, 1161 n.3 (Alaska 1989) (declining to decide whether compromise and release was governed by same rules governing "simple release[s] of tort liability" when parties agreed that it was).